995 A.2d 334

Gerard McSHEA, Charles A. Gaskins, and Emroyal Jones, Individually and on Behalf of All others Similarly Situated, Appellants

v.

The CITY OF PHILADELPHIA, Appellee.

Gerard McShea, Charles A. Gaskins, and Emroyal Jones, Individually and on Behalf of All others Similarly Situated, Appellants

v.

The City of Philadelphia, Appellee.

Gerard McShea, Charles A. Gaskins, and Emroyal Jones, Individually and on Behalf of All others Similarly Situated, Appellants

v.

The City of Philadelphia, Appellee.

Supreme Court of Pennsylvania.

Argued April 14, 2008.

Resubmitted Aug. 21, 2009.

Decided May 27, 2010.

Paul N. Bonavita, Steven E. Angstreich, Levy Angstreich Finney Baldante Rubenstein & Coren, P.C., Philadelphia, Michael Coren, for Gerard McShea, Charles A. Gaskins and Emroyal Jones, et al.

Eleanor N. Ewing, Philadelphia, Donald C. Marino, City of Philadelphia Law Department, for the City of Philadelphia in No. 24 EAP 2007.

Eleanor N. Ewing, Philadelphia, Michael F. Eichert, City of Philadelphia Law Department, for the City of Philadelphia in Nos. 25 EAP 2007 and 26 EAP 2007.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

From 1987 to 1994, appellants, a class of 12,000 current and former City of Philadelphia employees, participated in a voluntary Deferred Compensation Plan, deferring receipt of certain compensation which was deposited in various investments. The City's Director of Finance administered the Plan and had authority to designate a third party to handle routine management. From 1984 to 1992, the Public Employees Benefit Services Corporation (PEBSCO) contracted with the City to serve as the Plan's third party administrator.

PEBSCO charged an annual fee for its services, which included selecting and promoting investment products, and providing investment guidance to Plan participants. In 1989, the contract was modified to include a surrender fee, equal to 5% of the Plan's assets, payable to PEBSCO if the City terminated or failed to renew the contract without cause. In 1992, the City wanted to terminate its contract with PEBSCO without having to pay the surrender fee. Without the Director of Finance's approval, the City used Plan funds to hire outside counsel to accomplish this. The City terminated the contract "for cause," and sued PEBSCO in federal court for

breach of contract;[1] PEBSCO counterclaimed. The parties settled; the City agreed to pay PEBSCO $200,000 in exchange for waiver of the surrender fee balance.

Meanwhile, the City redirected 85% of Plan funds, which had been invested with Lincoln National at 7.3% interest through 1994, to an account offered by Constitution Life Company paying 4.88% interest. When Constitution's bond rating was downgraded, Constitution returned these funds to the City. For eight days, the City held these funds in a non-interest bearing account, later reinvesting them in an account paying 3.85%. Consequently, the Plan earned $3.5 million less through 1994 than it would have, had it remained with Lincoln.

Appellants filed this class action against the City in August, 1994. They alleged three counts in their amended complaint filed one month later. Count I alleged breach of fiduciary duty, and Count II requested an equitable accounting and audit of the Plan's assets based on the alleged fiduciary duty violation set forth in Count I. Only Count III is relevant here, incorporating the previously alleged counts and averring:

48. In taking the actions and/or failing to take actions alleged above, the Defendants acted in a grossly negligent and reckless fashion in wanton disregard of the Plan and it's [sic] participants['] rights and to the safety and productivity of the assets of the Plan.

49. As a result of the defendant's gross negligence and/or recklessness as aforesaid, the Plan and its participants have suffered injuries that are compensable in damages in an amount in excess of $50,000.00.

WHEREFORE, Plaintiffs individually and on behalf of all Plan participants and the class sought to be certified herein demands judgment against the City in an amount in excess of $50,000.00, together with punitive damages, attorney's fees, interest, costs and such further relief as the Court deems appropriate.

1. This lawsuit revealed to Plan participants, for the first time, the facts forming the basis of their subsequent claims.

Amended Class Action Complaint, 9/9/94, at 20–21. Appellants attached the Plan document to their amended complaint.

The City filed preliminary objections, averring appellants failed to plead with sufficient specificity in Count III the acts the City allegedly committed in a grossly negligent fashion. *See* Pa.R.C.P. 1028(a)(3) (preliminary objection for insufficient specificity in pleading). Appellants countered that Count III explained the City's actions were grossly negligent considering the City's duties under the Plan. The City filed a memorandum supplementing its preliminary objections, arguing the Tort Claims Act's governmental immunity provision barred Count III.[2] Citing *City of Philadelphia v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993), the City claimed it could not waive its governmental immunity despite any Plan language suggesting otherwise. *See id.*, at 1093–94 (holding ordinance did not abrogate immunity afforded City by Tort Claims Act).

The trial court dismissed the City's preliminary objections. Following extensive discovery, both parties filed cross-motions for summary judgment. The trial court granted the City's summary judgment motion on Counts I and II because they sounded in tort and were thus barred by the Tort Claims Act. Interpreting Count III as a contract claim, the trial court denied summary judgment in the City's favor because Tort Claims Act immunity does not attach to contract claims. Following a bench trial, the trial court held the City was "grossly negligent, in breach of its contract with [appellants]," in managing the Plan. *See* Trial Court Opinion, 5/12/05, at 2. The trial court awarded appellants $3.7 million in compensatory damages. Trial Court Molded Verdict, 5/17/05, at 1–2.

The Commonwealth Court affirmed the trial court's summary judgment rulings on Counts I and II, but reversed the

**2.** The Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, provides:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541.

trial court's summary judgment order on Count III. The Commonwealth Court reasoned:

> [R]eview of the complaint's averments reveals no explicit assertion of contract breach and no specific identification of any breached term of the Plan. . . . In concluding that the cause of action in Count III, which is clearly premised on allegations of carelessness in overseeing the administration of the Plan, survives immunity as a contract action, we must reluctantly conclude that common pleas erred. While we must admit to finding common pleas' result appealing from the standpoint of equity and justice, we simply cannot read the above language as stating even an implied claim for breach of contract; it plainly states a cause of action for negligence.

*City of Philadelphia v. McShea*, Nos. 1252, 1333, and 1334 C.D.2005, unpublished memorandum at 14–15, 907 A.2d 682 (Pa.Cmwlth. filed September 13, 2006). Because Count III stated a tort claim, it fell within the Tort Claims Act's grant of governmental immunity. The court determined the Plan's language, specifically § 7.04,[3] did not waive the City's immunity. *Id.*, at 15–16, 907 A.2d 682. Furthermore, the court concluded appellants' claim did not fall within any of § 8542's exceptions to governmental immunity. *Id.*, at 16, 907 A.2d 682; *see* 42 Pa.C.S. § 8542 (enumerating various exceptions to governmental immunity).

We granted allocatur to determine "[w]hether the Commonwealth Court misapplied the pleading requirements of Pa.R.C.P. 1019 in interpreting Count III of [appellants'] amended complaint as asserting a tort claim rather than a

---

**3.** Section 7.04 of the Plan provides:

The PARTICIPANT specifically agrees that in the absence of gross negligence, fraud or willful misconduct, neither the EMPLOYER, the Director of Finance, the ADMINISTRATOR nor any EMPLOYEE thereof shall be accountable or liable for any investment loss or any other loss, charge or expense of any kind incurred under this PLAN and the PARTICIPANT alone shall bear the risk of any investment loss, or other loss, charge or expense of any kind incurred under this PLAN.

City of Philadelphia Employees' Restated Deferred Compensation Plan, Effective Date: January 1, 1989, § 7.04, at 9.

contract claim[,]" and "[w]hether the Commonwealth Court misapplied Pennsylvania law when it held that the City was immune from liability under the Tort Claims Act[.]" *McShea v. City of Philadelphia,* 593 Pa. 361, 930 A.2d 1252 (2007) (table). Our standard of review is "limited to determining whether the trial court's findings are supported by competent evidence, whether errors of law have been committed, or whether the trial court's determinations demonstrate a manifest abuse of discretion." *Commonwealth, Department of Transportation, Bureau of Driver Licensing v. Tarnopolski,* 533 Pa. 549, 626 A.2d 138, 140 (1993).

When this Court entertains an appeal originating from a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence. The trial court's conclusions of law, however, are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts.

*Triffin v. Dillabough,* 552 Pa. 550, 716 A.2d 605, 607 (1998) (citations omitted).

Appellants assert Count III was properly pled as a contract claim pursuant to Rule 1019(a). *See* Pa.R.C.P. 1019(a) ("The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."). They contend they pled sufficient facts to demonstrate Count III was a contract claim based on § 7.04 of the Plan, which the trial court discerned to be a contract between the City and Plan participants, under which the City agreed to be liable for losses caused by its gross negligence. Appellants claim their omission of the words "contract" or "breach of contract" was irrelevant because they pled the requisite facts on which a contract cause of action is based. They rely on *Kuisis v. Baldwin–Lima–Hamilton Corporation,* 457 Pa. 321, 319 A.2d 914 (1974), which held a party's failure to allege a specific cause of action will not prove fatal to its claims. They argue a contract claim lies where a contracting party negligently performed its contractual undertaking in general, relying on *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108 (1993).

Appellants add they were precluded by the "gist of the action" doctrine from suing the City in tort. This doctrine "maintain[s] the conceptual distinction between breach of contract claims and tort claims[,]" and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super.2002) (citation omitted). Finally, appellants contend the Tort Claims Act is inapplicable because Count III sounded in contract.

The City asserts that because appellants claimed gross negligence and sought punitive damages, they stated a tort claim. The City contends appellants pled a specific gross negligence theory and waived any other causes of action in Count III. *See Garcia v. Community Legal Services Corporation*, 362 Pa.Super. 484, 524 A.2d 980, 982 (1987) (holding failure to plead separate causes of action waives unclaimed cause of action). It argues appellants failed to state the facts necessary to support a contract claim.

The City additionally claims appellants are attempting to avoid the governmental immunity defense by arguing Count III sounds in contract. *See Matarazzo v. Millers Mutual Group, Inc.*, 927 A.2d 689, 693 (Pa.Cmwlth.2007) ("a plaintiff may not avoid the defense of governmental immunity by couching a claim for the recovery of tort damages under a breach of contract theory"). Finally, the City contends the Tort Claims Act immunizes it from liability for its negligent acts, and it cannot waive this defense.

 Pennsylvania is a fact-pleading state. *Kuisis*, at 918 n. 8. "As a minimum, a pleader must set forth concisely the facts upon which his cause of action is based." *Line Lexington Lumber & Millwork Company, Inc. v. Pennsylvania Publishing Corp.*, 451 Pa. 154, 301 A.2d 684, 688 (1973). The complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim. *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335, 339 (1971) ("The purpose of [Rule 1019] is to require the pleader to disclose the

'material facts' sufficient to enable the adverse party to prepare his case.") (citation omitted).

Rule 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a). "Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." *Id.,* 1020(a). Thus, if Count III states a cause of action for breach of contract, it must be contained within Count III of the amended complaint.[4]

The necessary material facts that must be alleged for such an action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach. *Hart v. Arnold,* 884 A.2d 316, 332 (Pa.Super.2005) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.") (citations omitted). There is no need to allege any degree of negligence, as negligence is irrelevant to a contract action, unless the alleged breach is based on a contractual duty to provide professional skills consistent with those expected in a given field. *See Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 112 (1993) (attorney's liability for malpractice based on contract's terms).

In Count III, we find none of the necessary elements of a contract action. Count III does not allege the existence of a contract—it references "the Plan" but that is far short of alleging there was a contract between the parties. Likewise absent is any allegation the City breached a contractual duty, or that damages resulted from that breach.

What is present is a tort allegation. Count III provides, "In taking the actions and/or failing to take actions alleged above,

4. Although appellants incorporated their prior allegations into Count III, it does not appear they attempted to plead a contract claim anywhere else in the Amended Complaint, nor do appellants argue such a claim is present other than in Count III.

the [City] acted in a *grossly negligent* and *reckless* fashion in *wanton disregard* of the Plan and it's [sic] participants...." Amended Class Action Complaint, 9/9/94, at 20 (emphasis added). It demanded relief "[a]s a result of the [City]'s *gross negligence* and/or *recklessness* ... in an amount in excess of $50,000, together with *punitive damages,*[5] attorney's fees, interest, costs and such further relief as the Court deems appropriate." *Id.,* at 20–21 (emphasis and footnote added). Count III states a tort action in a manner that satisfies Rules 1019 and 1020; as a claim for breach of contract, it would not satisfy those same Rules. It is manifest a tort theory was posited, evidenced by the elements pled; it is equally obvious a contract breach was not pled. Interpreting this pleading to include a wholly separate cause of action only thwarts our Rules and the purpose behind them.

Although Pa.R.C.P. 126 requires Rule 1019 to be construed liberally, liberal construction does not permit unpled elements be pulled from thin air and grafted onto the pleading; it does not excuse the basic requirements of pleading. Where a pleading is straightforward, such as here, there can be no reworking of the claim so as to create a different theory of recovery. We are not construing an ambiguous statute, but a complaint drafted by a party, the very purpose of which is to alert the other party to that which must be defended.

The trial court engaged in an appealing analysis, but the fact remains appellants did not aver a breach of contract claim. This count alleges gross negligence, recklessness, and wanton conduct—it does not aver a contract, the breach of a contract, nor damages from such a breach. The cause of action it avers is therefore one sounding in tort, not contract.[6]

5. Punitive damages are awarded in tort actions, not for breach of contract. *See Ash v. Continental Insurance Company,* 593 Pa. 523, 932 A.2d 877, 881 (2007) (holding punitive damages awarded in tort actions).

6. Section 7.04 may have arguably created a contract relationship, wherein the City agreed to assume liability for acts of gross negligence; however, that question is not before us.

█ As Count III sounds in tort, the defendant City may claim protection under the Tort Claims Act. Appellants have maintained the personal property exception to governmental immunity applied, and the trial court's ruling to the contrary was erroneous. That exception states:

*Care, custody or control of personal property.*—The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

42 Pa.C.S. § 8542(b)(2). We find the Commonwealth Court properly noted, "due to the City's legal and equitable ownership of the Plan funds, [appellants] cannot fit their claim within the personal property exception in order to avoid the bar of immunity." *McShea,* at 16, 907 A.2d 682; *see also* City of Philadelphia Employees' Restated Deferred Compensation Plan, Effective Date: January 1, 1989, § 4.06, at 6. The governing law at the time provided deferred compensation remained the employer's property. *See* 26 U.S.C.A. § 457(b)(6) (West Supp.1993), *amended by* 26 U.S.C.A. § 457(b)(6) (1996); 72 P.S. § 4521.2(h) (Supp.1993), *amended by* 72 P.S. § 4521.2(h)(1)-(4) (1998).[7]

█ The clear intent of the Tort Claims Act was to insulate the government from exposure to tort liability. *See Dean v. Commonwealth of Pennsylvania, Department of Transportation,* 561 Pa. 503, 751 A.2d 1130, 1132 (2000). Tort immunity is a non-waivable, absolute defense. *See In re Upset Sale of Properties,* 522 Pa. 230, 560 A.2d 1388, 1389 (1989). In holding the City could not incur liability on Count III, the Commonwealth Court relied on *Rodriguez v. City of Philadelphia, Department of Human Services,* 657 A.2d 105 (Pa.Cmwlth.1995). In *Rodriguez,* the Commonwealth Court held an indemnity provision in a lease under which the City

7. We do not reach a conclusion as to whether 42 Pa.C.S. § 8542(b)(2)'s exception to immunity applies to what appears to be governing federal law because appellants failed to preserve a claim under § 8542.

was a tenant could not operate as a contractual waiver of the City's immunity. *Rodriguez*, at 108. In an earlier case, the Commonwealth Court opined, "[T]he legislature never intended for a local agency to be held liable for tort damages under a contract theory." *Sims v. Silver Springs–Martin Luther School*, 155 Pa.Cmwlth. 619, 625 A.2d 1297, 1302 (1993). Thus, pursuant to § 8541's plain language, and this Court's precedent interpreting the legislature's clear intent to immunize political subdivisions from tort—not contract—liability, a political subdivision cannot waive tort immunity by contract. *See* 42 Pa.C.S. § 8541; *Sphere Drake Insurance Company v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510, 515 (2001) (Tort Claims Act's overall purpose limits governmental exposure to tort liability); *In re Upset Sale of Properties*, at 1389 (tort immunity is non-waivable defense).

Although § 7.04 indicates the City would be liable for its gross negligence, these words create no tortious liability, and a contract breach was not pled.

For the foregoing reasons, the Commonwealth Court's order is affirmed. Jurisdiction relinquished.

Justices SAYLOR, TODD and ORIE MELVIN join the opinion.

Justice BAER files a dissenting opinion in which Chief Justice CASTILLE and Justice McCAFFERY join.

Justice BAER, dissenting.

The Majority presently finds that Appellants pleaded their case solely in tort, rather than in assumpsit, because they did not allege the existence of a contract, that the City breached a contractual duty, or that damages resulted from the breach. Because Appellant alleged "gross negligence," which was the standard for breach of the peculiar contract *sub judice*, but is not typically a criteria in a contract action, and because Appellants sought punitive damages, which are only available in tort actions, the Majority disregards the trial court's holding that Appellants' complaint could be read to state a claim in

assumpsit. For the reasons explained below, I respectfully disagree with the Majority's analysis and conclusion.

From 1987 through 1994, Appellants participated in a Deferred Compensation Plan (the Plan) established by the City in 1982 and managed by the City. The Plan functioned as a savings program; City employees deferred receipt of certain pre-tax compensation and deposited such funds into various investment options that were pre-selected and approved by the City. The rights of Plan participants were determined by the "Plan document," which, together with a joinder agreement executed by each participant, was a contract between the City and the participants. *See* Plan document, Section 2.10, R.R. 121a ("This PLAN and the JOINDER AGREEMENT ... shall constitute the entire Agreement between [the City] and the PARTICIPANT."). Section 7.04 of the Plan document provided that the City would not be liable for any "investment loss or any other loss, charge or expense of any kind incurred" under the Plan absent its "gross negligence, fraud, or willful misconduct."

On August 9, 1994, Appellants filed a class action against the City on behalf of 12,000 Plan participants. In an amended complaint filed one month later, Appellants brought three counts against the City. Relevant to this appeal, in Count III of their complaint, Appellants invoked the language of Section 7.04 of the Plan and alleged that the City acted in a "grossly negligent and reckless fashion in wanton disregard of the Plan," its participants, and the productivity of the Plan assets, and that the City's "gross negligence and/or recklessness" injured Appellants. Amended Class Action Complaint of September 9, 1994, at 20–21. Although Appellants attached the Plan document to their complaint, they did not explicitly aver that the City breached any specific provision thereof.

The City responded with a preliminary objection claiming that Count III sounded in tort and accordingly was barred by the governmental immunity afforded to the City by the Political Subdivision Tort Claims Act (Tort Claims Act). Significantly, the trial court dismissed the City's preliminary objec-

tion to Count III, permitting the case to proceed to discovery.[1] The trial court rejected this argument once again at the summary judgment stage, holding that the City was not entitled to the protection of the Tort Claims Act in that the Appellants' claim could permissibly be interpreted as one sounding in assumpsit, which afforded Appellants the opportunity to prove a breach of contract. The case proceeded to a non-jury trial on what the trial court concluded was Appellants' contract claim.[2] Following the conclusion of trial, the trial court held that the City breached the contract through grossly negligent conduct, violating Section 7.04 of the Plan.[3] Accordingly, the trial court awarded Appellants approximately $3.7 million in contractual, compensatory damages.[4]

Pennsylvania is a fact-pleading jurisdiction. *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914, 918 n. 8 (1974). Accordingly, Rule 1019(a) requires a plaintiff to disclose material facts sufficiently to enable the adverse party to prepare the case. Pa.R.C.P. No. 1019(a). *See also Line Lexington Lumber & Millwork Co., Inc. v. Pennsylvania*

1. The Majority substantively accepts the City's theory initially raised in its preliminary objection. The difficulty is that if the trial court would have granted the City's preliminary objection, resulting in dismissal of Appellants' case, Appellants would have had the right to replead, and could have more specifically pled their intention to state a claim in assumpsit. Obviously, that right is no longer available to Appellants.

2. The City was well aware of the procedural history of the case, had years to prepare a defense to the assumpsit action, and, in fact, did present such a defense.

3. Specifically, the trial court first concluded that certain investment products promoted by PEBSCO were unsuitable investments under the Plan, and that the City was grossly negligent when it failed to obtain City Council's approval for the sale and use of these investment products. Second, the trial court found that the City was grossly negligent when it agreed to the surrender fee in 1989 and charged the consultant and law firm fees to the Plan without Appellants' knowledge. Third, the trial court found the City was grossly negligent when it transferred the Plan's funds to Constitution and when it held the funds in a non-interest bearing account for eight days.

4. This amount represented reimbursement (with pre-judgment and post-judgment interest of 6%) of the fees paid to avoid the surrender fee, the interest lost as a result of the transfer of Plan assets to Constitution, and reimbursement of the commissions paid in connection with inappropriate investment vehicles.

*Publ'g Corp.*, 451 Pa. 154, 301 A.2d 684, 688 (1973) ("As a minimum, a pleader must set forth concisely the facts upon which his cause of action is based."). We have construed this rule to mean that the complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim. *Landau v. Western Pennsylvania Nat'l Bank*, 445 Pa. 217, 282 A.2d 335, 339–40 (1971) ("The purpose of [Rule 1019] is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case."); *Smith v. Allegheny County*, 397 Pa. 404, 155 A.2d 615 (1959).

Under Rule 1019, which must be construed liberally, *see* Pa.R.C.P. No. 126, Appellants were obligated to set forth concisely the facts on which their cause of action was based to enable the City to prepare a defense. As noted, Count III of Appellants' complaint incorporated the prior allegations and alleged that in taking the actions detailed in the complaint, the City acted "in a grossly negligent and reckless fashion" Amended Class Action Complaint of September 9, 1994, at 20–21. Further, Appellants asserted that as a result of the City's "gross negligence and/or recklessness as aforesaid," the Plan and its participants suffered damages in an amount in excess of $50,000.00. *Id.* Appellants also demanded "punitive damages, attorney's fees, interest, cost and such further relief as the Court deems appropriate." *Id.* Appellants attached the Plan to their complaint.

A fair reading of the complaint indicates that Appellants' theory of liability is that the City mismanaged the Plan and its assets, and that such mismanagement rose to the level of gross negligence and resulted in damages. I do not believe it is explicitly clear, however, whether they claimed a tort or a breach of contract. As the Majority observes, Appellants asked for punitive damages, which are not available in contract actions, indicating that they were, in fact, basing their theory in tort. *See Smith v. Harleysville Ins. Co.*, 275 Pa.Super. 246, 418 A.2d 705, 706 (1980) ("The law in Pennsylvania has always been that punitive damages cannot be recovered for breach of contract."), *aff'd*, 494 Pa. 515, 431 A.2d 974

(1981); *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 235 (3d Cir.2003) (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 436 (3d Cir.1986)). However, the complaint could also be read to raise a contract claim by virtue of the repeated references throughout it to the ways in which the City was grossly negligent (the articulated test for a breach) with respect to its management of the Plan and its assets, resulting in investment and other losses; because Appellants sought interest, which is a contract damage; and because Appellants attached the Plan document to the complaint.

At the summary judgment stage, the trial court reviewed the record before it, including the complaint and the Plan document attached thereto, and concluded that the Plan document was a contract between the City and Appellants, Appellants pled that the City's conduct and omissions during its management of the Plan amounted to gross negligence, and such conduct was the contractual definition of breach pursuant to Section 7.04 of the Plan document. Because the facts alleged in the complaint indicated that the City's liability arose from its mismanagement of the Plan and its assets, and because the parties had a contract governing the administration of the Plan, the trial court permitted Appellants the opportunity to prove a breach of contract at trial, which they ultimately did.

I believe that the trial court's decision to allow Appellants to proceed to trial to prove a breach of contract, based on the facts alleged in the complaint, was an appropriate act of trial court discretion. Such discretion encompasses the decision to allow a party to amend a complaint to amplify or clarify a cause of action already stated if the amendment would not prejudice the defendant. *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914, 919 (1974). In *Kuisis*, for example, the plaintiff brought an action in trespass based on allegations of negligence in the design and manufacture of a crane. Prior to trial, and after the expiration of the statute of limitations, plaintiff was permitted to amend the complaint to add a claim for strict liability under § 402A of the Restatement Second of Torts. We found that the trial court properly

allowed the plaintiff to amend the complaint because the "claim under § 402A was clearly implicit in [the] allegations of negligence in the design and manufacture of the crane," and the "principle of strict liability in tort adds nothing to Kuisis' theory of how the accident occurred." *Id.* at 918. We explained as follows:

> [I]t is [t]he defect itself which constitutes the cause of action. Thus, it is of no moment that the theories of negligence and strict liability may be subject to different defenses and require different measures of proof. Assuming arguendo that two different causes of action are involved here, for purposes of the statute of limitations, [b]oth were stated in the original complaint.

*Kuisis*, 319 A.2d at 918.

Therefore, we concluded that "Kuisis has never deviated from his assertion that his injuries were caused by an unreasonably dangerous condition in the crane, for which the manufacturer-seller was responsible." *Id.* Because the allegations of the original complaint comprised the material facts on which the claim under § 402A was based, we held that the amended complaint suggested no new theory of causality or breach of duty by the defendant, and found that it worked no prejudice to the defendant by stating a new cause of action beyond the expiration of the statute of limitations.

Here, Appellants' complaint referred repeatedly to the City's conduct in administering the Plan. For example, Appellants faulted the City's decision to move Plan assets into various investment vehicles, alleged that the City abdicated its responsibility to manage Plan assets responsibly, averred that the City's Finance Department failed properly to oversee and monitor the investment options offered under the Plan, accused the Finance Department of allowing the Plan's affairs, records, and investment portfolio to deteriorate, asserted that the City paid various fees with Plan assets without disclosing such arrangements to Appellants, and claimed that as a result of the City's mismanagement of the Plan's assets, Appellants suffered various damages. In Count III, Appellants asserted that the City acted in a grossly negligent manner in taking or

failing to take these actions, which as noted, under the unusual facts of this case, was the criteria defining a contractual breach in Section 7.04 of the Plan document, and is also a universal standard of tort liability. The same facts, therefore, supported either a contract claim or a tort claim, because both claims turned on the City's gross negligence in administering the Plan. In fact, to clarify that they sought to prove a breach of contract, Appellants would not have had to change any of the facts alleged in their complaint.

Based on the analysis provided in *Kuisis,* even assuming *arguendo* that Appellants' complaint initially sounded solely in tort, the trial court could have permitted them to amend it to clarify their desire to proceed solely in assumpsit if there was no prejudice to the City. The averment of gross negligence was premised on the same facts and allegations, and subject to the same proofs and defenses, irrespective of whether Appellants proceeded in tort or assumpsit. The assertion of a breach of contract claim added nothing to Appellants' theory of how the injuries occurred; the same conduct by the City served as the basis for either a tort claim or a contract claim. It was the City's conduct in administering the Plan that constituted the cause of action. Indeed, the complaint set forth all of the facts in thirty-three paragraphs, and then set forth the claim for "gross negligence" in three conclusory paragraphs. Appellants have never deviated from their material assertions that their economic injuries were caused by the City's administration of the Plan. Accordingly, the cause of action leading to Appellants' injuries, *i.e.,* the City's grossly negligent administration of the Plan, was stated in the original complaint. *Id.*

Further, although an amendment would not be appropriate if it would prejudice the City, I can discern no prejudice here. *See Schwab v. P.J. Oesterling & Son, Inc.,* 386 Pa. 388, 126 A.2d 418 (1956) (stating that prejudice that will bar an amendment is not that which results from the amendment itself, but must be real and arise from a factor that is independent of the fact that the amendment in and of itself improves a plaintiff's likelihood of success). The City's only assertion of prejudice

is that by the time the trial court denied summary judgment in its favor, it had spent seven years in discovery defending the case as a tort. The City does not, however, articulate what it would have done differently assuming *arguendo* that it had indeed been confused concerning whether Appellants' claim was premised on a breach of contract rather than tort negligence as articulated above as it proceeded through the discovery process. The allegations against the City remained the same whether the claim sounded in tort or contract; the same standard of liability applied (gross negligence); and the injuries to Appellants were the same. In short, the City was called upon to defend against allegations of gross negligence resulting from administration of the Plan in the ways specified in the complaint, regardless of whether Appellants proceeded in tort or in contract.

Consequently, if Appellants had believed it necessary to amend their complaint to clarify that they sought to proceed on a contract theory past the expiration of the statute of limitations for a breach of contract, the amendment could have been allowed because it would have amplified or clarified a cause of action already stated and would not have prejudiced the City. *Kuisis,* 319 A.2d at 919. Of course, Appellants herein did not seek to amend their complaint to add a claim for breach of contract. Rather, the trial court, at summary judgment, accepted Appellants' argument that they were claiming a breach of contract and permitted them to advance to trial to prove such a breach without necessitating an amendment to the complaint. The trial court's acceptance that the facts alleged in the complaint already supported a breach of contract theory obviated the need to amend. Because Appellants would have been able to amend their complaint to assert explicitly a breach of contract that was supported by the facts, I believe the trial court was within its discretion in reviewing the complaint and concluding that the facts supported a contract theory of liability. *See Kuisis,* 319 A.2d at 918 (where a plaintiff's cause of action was implicit in the original complaint, plaintiff could amend complaint after

the statute of limitations period had run to amplify original claim as long as the defendant was not prejudiced).

Rule 1020 mandates that when a plaintiff pleads more than one cause of action in a complaint, each cause of action must be listed separately, and requires the plaintiff to join all causes of action which arise from the same transaction or occurrence. Failure to join a cause of action as required by Rule 1020(d) results in waiver of that claim. Here, the trial court did not permit Appellants to proceed in both contract and tort based upon the allegations set forth in Count III. Rather, the trial court concluded that the facts alleged in Count III supported a claim for breach of contract and permitted Appellants to proceed solely on that theory. Because the trial court did not permit Appellants to proceed in both tort and contract based upon the allegations in one count, I see no violation of Rule 1020.

Because I would conclude that the trial court committed no error when it held that Appellants' claim sounded in contract, I would likewise conclude that the action was not barred by the Tort Claims Act. By assuming a "gross negligence" standard of liability, the City agreed to be liable for investment loss resulting from its gross negligence. *See In re Scheidmantel,* 868 A.2d 464, 483 (Pa.Super.2005) (noting that parties may define a breach of trust in terms of "actual fraud, gross negligence or willful misconduct," and that such a term may be binding provided it does not offend public policy). Where the Plan document was explicit as to the duty owed by the City, the contract terms govern. *See Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 661 (1982) ("Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed...."). I do not believe that imposing liability for breach of contract, for which the City contractually agreed to be liable, runs afoul of the Tort Claims Act.

Moreover, the General Assembly did not intend to shield political subdivisions from contractual liability *via* the Tort Claims Act, which was enacted to "limit governmental exposure to tort liability for its acts" except in certain specified

circumstances. *Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 579 Pa. 404, 856 A.2d 43, 46–47 (2004); *Sphere Drake Ins. Co. v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510, 515 (2001); *see also Dean v. Commonwealth Dep't of Transp.*, 561 Pa. 503, 751 A.2d 1130, 1132 (2000) (noting that the clear intent of the Tort Claims Act was to insulate the government from exposure to tort liability); *Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673, 675–76(1996), *cert. denied*, 519 U.S. 870, 117 S.Ct. 184, 136 L.Ed.2d 123 (1996) (same); *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118, 1123 (1987) (same). Rather, the legislature singled out tort damages, as opposed to contract damages, to protect the public treasury from potentially enormous tort damage awards. *See Sphere Drake*, 782 A.2d at 515; *Smith v. City of Philadelphia*, 512 Pa. 129, 516 A.2d 306, 311 (1986) (plurality) ("Preservation of the public treasury as against the possibility of unusually large recoveries in tort cases, is, self-evidently, an important governmental interest"); *Helsel v. Complete Care Serv., L.P.*, 797 A.2d 1051, 1057 (Pa.Cmwlth.2002) (noting that the overall purpose of governmental immunity statutes is to limit governmental exposure to tort liability for its acts and to preserve the public treasury against the possibility of unusually large recoveries in tort cases); *Casey v. Geiger*, 346 Pa.Super. 279, 499 A.2d 606 (1985); *Vann v. Board of Educ. of the School Dist. of Philadelphia*, 76 Pa.Cmwlth. 604, 464 A.2d 684 (1983).[5] Here, the trial court ordered the City to pay purely

---

5. A tort action derives from a violation of a legal duty, *see Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983), and protects one's interest in freedom from harm, to either his person or his property. A successful tort plaintiff usually recovers the actual damages or compensatory damages that she suffered because of the tort, and, in cases where the defendant's behavior is particularly egregious, injured victims may also be able to recover punitive damages. *See, e.g., Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 870 A.2d 766, 770 (2005); W. Page Keaton, Prosser and Keaton on the Law of Torts, § 1 (5th ed. 1984). In contrast, damages in a contract action are the result of a breach of a binding agreement. Neither punitive damages nor delay damages are available in contract actions. *See Smith*, 418 A.2d at 706; Pa.R.C.P No. 238; *Touloumes v. E.S.C. Inc.*, 587 Pa. 287, 899 A.2d 343, 348 (2006); *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147, 154 (1981).

contractual damages, and did not expose the public treasury to the possibility of an unusually large tort recovery.

I find *City of Philadelphia v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993), and *Rodriguez v. City of Philadelphia*, 657 A.2d 105 (Pa.Cmwlth.1995), on which the Majority relies, distinguishable on their facts. Neither *Gray* nor *Rodriguez* concerned a breach of contract claim against a political subdivision, as opposed to an action in tort seeking remedies consistent therewith. In *Gray*, two individuals who were injured when they collided with City police cars sued the City for personal injury. 534 Pa. 467, 633 A.2d 1090. Mrs. Gray obtained a jury verdict, including damages for pain and suffering and delay damages, against the City. The issue on appeal in was whether the City's waiver of immunity by a city ordinance, which precluded the City from pleading governmental immunity in civil actions arising from bodily injury or death caused by negligent or unlawful conduct by a police officer, was invalid pursuant to the Tort Claims Act. This Court concluded that it was, finding that the City had improperly attempted to waive tort immunity for personal injury beyond the enumerated exceptions granted by the legislature. *See also In re Upset Sale of Properties*, 560 A.2d at 1389 (concluding that tort immunity is an absolute, non-waivable jurisdictional defense).

In *Rodriguez*, 657 A.2d 105, members of Ms. Rodriguez's family brought wrongful death and survival actions against the City, contending that Ms. Rodriguez was killed by a detainee from a work-release program operated by the City in a facility leased from the YWCA. Under the lease agreement between the City and the YWCA, the City agreed to provide security for the detainees and to indemnify the YWCA from all liability for damage to a third party's property or person occurring on the City's leased space. Ms. Rodriguez's family asserted negligence claims against the City, contending that the City had contractually waived its governmental immunity through its lease agreement with the YWCA. The trial court granted summary judgment in favor of the City, finding that the City could not waive tort immunity by contract. On appeal, the

Commonwealth Court agreed, finding that the appellant's tort action did not fall within any of the enumerated exceptions of the Tort Claims Act, *see* 42 Pa.C.S. § 8542. *See also Sims v. Silver Springs–Martin Luther School,* 155 Pa.Cmwlth. 619, 625 A.2d 1297 (1993) (finding that the legislature never intended, under the Tort Claims Act, that a local agency be held liable for tort damages under a contract theory).

In both cases, and in *Sims,* the court rejected an award of tort damages against a political subdivision outside of the enumerated exceptions to tort immunity. Each case concerned the City's potential liability for tort damages. Neither concerned the City's liability for contract damages resulting from a breach of an explicit contract. Because the trial court here permitted Appellants, on the basis of the complaint, to proceed in assumpsit, in a nonjury proceeding and only awarded contract damages, I do not find these cases concerning the City's inability to waive tort immunity and subject the City to tort damages applicable.

Accordingly, I believe that the trial court acted within its discretion when it found that Appellants' complaint supported a claim for assumpsit, the City was not prejudiced by the trial court's decision to permit Appellants to proceed on contract where the facts in the complaint supported a breach of contract, and that the Commonwealth Court erred in reversing the discretionary holding of the trial court in this regard. I further believe that the Tort Claims Act does not bar contract actions. Therefore, I respectfully dissent.

Chief Justice CASTILLE and Justice McCAFFERY join the opinion.