J-A08012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RONALD M. KRAJEWSKI AND THERESA M. KRAJEWSKI, H.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, SUCCESSOR IN INTEREST TO AMERICAN TITLE INSURANCE COMPANY, | |
| Appellee | No. 1350 EDA 2015 |

Appeal from the Order Entered April 8, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2014-00369

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                          **FILED MAY 11, 2016**

Ronald M. and Theresa M. Krajewski appeal the order entered on April 8, 2015, wherein the trial court granted summary judgment in favor of the Appellee herein, Fidelity National Title Insurance Company, successor in interest to American Title Insurance Company.  We affirm.

This appeal has its genesis in a dispute concerning coverage under a title insurance policy (the "policy") purchased by Appellants.  The policy covers property owned by Appellant located at 9 Cobalt Ridge Drive North, Levittown, Pennsylvania ("9 Cobalt").  The policy insures against loss or damage sustained by reason of, *inter alia*, "Title to the estate or interest described in Schedule A being vested otherwise than as stated therein . . .

* Retired Senior Judge assigned to the Superior Court.

[and] any defect in or lien or encumbrance on such title[.]" Title Insurance Policy, 2/28/89, unnumbered at 1. The interest referred to in Schedule A is set forth in Schedule C, which reads,

> ALL THAT CERTAIN Lot, piece or parcel of land with the building and improvements thereon, situate, lying and being at Levittown, in the Township of Middletown, County of Bucks, Commonwealth of Pennsylvania shown and designated as Lot No. 7962-J on Subdivision Map of "Cobalt Ridge," Levittown, Section 70 filed in the Office of the Recorder of Deeds of Bucks County, Pennsylvania on January 18, 1955 in Plan Book 9 Page 16, as follows, to wit:
>
> BEGINNING at a point on the Northerly side of Cobalt Ridge Drive (56.00 feet wide) at a corner of Lot No. 7963-J thence extending from said point of beginning and extending along Lot No. 7963-J North 44 degrees 58 minutes 17 seconds East 139.68 feet to a point; thence extending South 27 degrees 33 minutes 11 seconds East 97 feet to a point, a corner of Lot No. 7961-J; thence extending along the same South 59 degrees 07 minutes 10 seconds West 120.87 feet to a point on the Northerly side of Cobalt Ridge Drive; thence extending along the same in a Westerly direction on the arc of a circle curving to the left, having a radius of 250.00 feet the arc distance of 63.50 feet to the first mentioned point and place of beginning.
>
> BEING THE SAME PREMISES WHICH Lawrence R. Michaels, Sheriff of the County of Bucks by his deed dated August 12, 1988 and recorded in Deed Book 2844 Page 1163, did grant and convey unto Dennis Kulp.

*Id*. at Schedule C. This language duplicates the description of the property in Appellants' deed to 9 Cobalt as well as each deed in the chain of title to 9 Cobalt. The designated interest does not include a parcel of property located behind 9 Cobalt, referred to as Lot 2.

- 2 -

Of import to our disposition are a number of documents purporting to affect the property interests encompassed by ownership of Lot 2 and 9 Cobalt. On November 9, 1960, a subdivision agreement was signed by the then-owners of Lot 2, Walter S. and Mary Heller, and Appellants' predecessor in title to 9 Cobalt, James and Patricia Jones. The subdivision agreement stated:

> That from and after the date of this Agreement that Lots No. 2 through 6, as shown on the said subdivision plan of Walter S. Heller . . . shall hereinafter be joined with and shall never be severed from the following adjoining lots thereto . . .
>
> (a) Lot No. 2 shall be forever joined and never severed from Lot No. 7962-J [9 Cobalt] . . ..

Subdivision Agreement, 11/9/60, at 2.[1]

Ownership of Lot 2 was subsequently transferred by delivery of a deed dated March 14, 1961, and recorded March 16, 1961. This deed conveyed Lot 2 from Walter S. and Mary M. Heller to James E. Jones (the "Heller to Jones deed"). The description of the property in the deed adhered to the boundaries of Lot 2, without including any portion of 9 Cobalt. Nonetheless, the deed professes to ensure that Lot 2 and 9 Cobalt "are hereby joined and shall never be severed." Lot 2 Deed, 3/14/61, at unnumbered 1-2.

---

[1] The agreement was signed and executed on November 9, 1960. **See** Subdivision Agreement, 11/9/60, at 3. It was recorded on June 27, 1961.

Finally, ownership of 9 Cobalt was assigned by delivery of a deed dated March 20, 1961, and recorded March 22, 1961, wherein James and Patricia Jones conveyed 9 Cobalt to themselves, creating a tenancy in the entirety. That deed included a metes and bounds description which referenced only 9 Cobalt without incorporating the parcel known as Lot 2. It also did not include any language calling for those lots to be "joined and never severed."

In 1989, 9 Cobalt was sold to Dennis Kulp as a result of a mortgage foreclosure. Dennis Kulp, in turn, transferred ownership of 9 Cobalt to Appellants. Neither of the deeds involved in these transactions included reference to or a metes and bounds description of the property encompassing Lot 2. Shortly thereafter, James Jones conveyed ownership of Lot 2 to Appellants' neighbors, the owners of 5 Cobalt Ridge Road North, Levittown, Pennsylvania ("5 Cobalt").

Appellants, believing themselves to be the rightful owners of Lot 2 based on the language contained in the March 14, 1961 Heller to Jones deed, filed a claim with Appellee to defend their title. Appellee denied that claim, averring that Lot 2 was not covered by the terms of the policy. Appellants brought a quiet title action against the owners of 5 Cobalt to obtain ownership of Lot 2. They were unsuccessful. Appellants then brought suit against Appellee, arguing Appellee breached the policy by failing to provide counsel in Appellants' quiet title action. Appellee moved

for summary judgment, which was granted by the court below. This timely appeal followed.

Appellants present three questions for our review:

1. Did the Trial Court commit reversible error by disregarding the well-settled rule that in construing the terms of a contract, the contract must be read in its entirety, giving effect to all of the contractual language, if at all possible?

2. Did the Trial Court commit reversible error by relying upon the metes and bounds legal description attached to the Title Policy at Schedule C, and by failing to recognize that it is the interest in the land described by Schedule C, not the land itself, that is the real subject of the title insurance?

3. Did the Trial Court commit reversible error by failing to determine that the 1961 Subdivision Agreement was a recorded instrument affecting the insured title, and that it was not excluded from coverage?

Appellant's brief at 2.

Our standard of review is as follows:

An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow

a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa.Super. 2015) (*en banc*) (citation omitted). In the context of a breach of contract action, Appellants must show there is a genuine issue of material fact regarding whether there was a contract, the defendant breached it, or the plaintiffs suffered damages from the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

Appellants' contentions all rely upon one line of reasoning. Hence, we consider them together. Appellants claim the 1961 subdivision agreement created an "interest" in Lot 2 causing it to become "appurtenant" to 9 Cobalt. Appellant's brief at 22-24. Thus, Appellants contend, the trial court erred by not interpreting the word "interest" in the title policy to include the alleged interest in Lot 2. As a result, Appellants continue, the trial court further erred by only considering the metes and bounds description of the land in the policy in determining whether it covered alleged defects in the title to Lot 2; rather, the title policy should be read to protect against suspected defects in the title to 9 Cobalt **and** Lot 2 by way of the supposed interest 9 Cobalt holds in Lot 2. Therefore, by not protecting Appellants' interest in Lot 2, Appellants argue that Appellee breached the terms of the policy.

- 6 -

Appellee counters that Lot 2 is a wholly separate parcel of land, was not included in the description of covered property in the policy, and thus was not insured. Appellee's brief at 9. Appellee emphasizes the clear and unambiguous terms of the policy, which indicate that it expressly insured Appellants' interest in 9 Cobalt as described in Schedule A (which relies on the description of land provided in Schedule C). Appellee also points to the language contained in Appellants' deed from Kulp, and all prior deeds in the chain of title, which all include identical descriptions of 9 Cobalt and no reference to Lot 2. *Id*. at 10. Thus, Appellee maintains, it owed no duty to Appellants in regard to the alleged interest in Lot 2.

The trial court found that Appellee did not breach the policy since it insured 9 Cobalt and not Lot 2. Trial Court Opinion, 8/10/15, at 6. The court determined it was indisputable that the metes and bounds description provided within the terms of the policy did not include Lot 2. *Id*. at 9. As the scope of coverage only extends to insured land, as described within the policy, the trial court concluded Appellee owed no duty to Appellants regarding Lot 2. *Id*.

With regard to the 1961 subdivision agreement, the court implicitly determined that it had not created an interest in Lot 2 in 9 Cobalt. The court observed that there was no hostile claim in property owned by Appellants. *Id*. at 11. Rather, Appellants' neighbors purchased Lot 2, and were declared its rightful owners in the prior litigation. *Id*. In addition, at no point did

Appellants pay consideration for Lot 2 or secure its deed.  *Id*.  Since there was no hostile claim on property owned by Appellants, the court concluded there could be no breach of the policy because title to 9 Cobalt was not "vested as otherwise stated."  *Id*.  Therefore, the court found summary judgment was properly granted in favor of Appellee.  We agree.

In a previous case before this court, Appellants argued, *inter alia*, that they owned Lot 2 by virtue of the restrictive covenant contained in the Heller to Jones Deed.  *See Krajewski v. Jakubowicz*, 998 A.2d 994 [2216 EDA 2008] (Pa.Super. 2010) (unpublished memorandum at 3).  In that case, we reasoned that, when Walter and Mary Heller conveyed Lot 2 to James Jones, they could place a restrictive covenant, such as the one at issue here, on that property.  *Id*. at 6.  However, we noted the restrictive language applied to both Lot 2 and 9 Cobalt, as it prohibited each lot from being severed from the other lot.  *Id*.  Since Walter and Mary Heller did not own 9 Cobalt at the time of the conveyance, we concluded that they could not restrict that property. Thus, the restrictive language in the deed to Lot 2 was legally inoperative.  *Id*.  As such, the owners of 5 Cobalt were ultimately ascertained to be the rightful owners of Lot 2.

In the case *sub judice*, Appellants have produced a document purporting to overcome this Court's prior ruling.  The 1961 subdivision agreement declares a promise by Walter and Mary Heller, as owners of Lot 2, and James and Patricia Jones, as owners of 9 Cobalt, that those

properties "shall be forever joined and never severed." 1961 Subdivision Agreement, unnumbered at 2. Appellants contend that this agreement between the owners of Lot 2 and 9 Cobalt is sufficient to render Lot 2 "appurtenant" to 9 Cobalt. Appellant's brief at 24. Thus, Appellants would have us hold that whether the restrictive covenant in the deed to Lot 2 is legally inoperative is irrelevant, as the 1961 subdivision agreement had already created an interest in 9 Cobalt as contained within the Heller to Jones deed when the landowners signed that agreement.

We observe "a landowner may limit his or her private use and enjoyment of real property by contract or agreement." **Vernon Tp. Volunteer Fire Dept., Inc. v. Connor**, 855 A.2d 873, 879 (Pa.Super. 2004) (citation omitted). However,

> restrictive covenants on the use of land interfere with an owner's free use and enjoyment of real property and, therefore, are not favored by the law. Because land use restrictions are not favored in the law, they are to be strictly construed, and nothing will be deemed a violation of such a restriction that is not in plain disregard of its express words . . . [a]lthough the law may disfavor restrictions on an owner's free use and enjoyment of real property, restrictive covenants are legally enforceable.

*Id*. (citations and internal quotations omitted). As a general rule, a restrictive covenant may be discharged if there has been acquiescence in its breach by others, or an abandonment of the restriction. *Id*. at 880. We need not determine whether the 1961 subdivision agreement created an interest in Lot 2 inuring to the owners of 9 Cobalt. Rather, we find that even

- 9 -

if one had been created, it was abandoned shortly thereafter. Instead, James Jones and James and Patricia Jones retained, and exercised, free and unrestricted use of both Lot 2 and 9 Cobalt, respectively.

Here, James Jones and James and Patricia Jones abandoned the restrictive covenant by not including the covenant in the conveyance of 9 Cobalt, creating a tenancy in the entirety on March 20, 1961. This conveyance occurred six days after the purchase of Lot 2 by James Jones from Walter and Mary Heller. It does not include the restrictive covenant, and additionally, the transaction itself plainly disregards the covenant's express words.[2] We infer from this that, having the deeds to Lot 2 and 9 Cobalt in hand, James Jones and James and Patricia Jones intended to treat the lots as separate parcels, thus abandoning the covenant to treat them "as joint and never severed."

The intent to abandon the restrictive covenant is further evidenced by the fact James and Patricia Jones made no attempt to add the restrictive language to the 9 Cobalt deed in the intervening 27 years before foreclosure of the mortgage on the property. Furthermore, in 1989, James Jones sold Lot 2 to the owners of 5 Cobalt, not 9 Cobalt, which stands as additional

_____

[2] That is, by conveying 9 Cobalt to themselves as tenants in the entirety, James and Patricia Jones affected a change in ownership of the parcel individually and separately from Lot 2, in direct violation of the terms of the restrictive covenant.

evidence that he did not intend the parcels to be treated as joint property, and never severed.

In summary, notwithstanding the restrictive language contained in the 1961 subdivision agreement and the Lot 2 deed, James Jones' conduct following his assumption of ownership of Lot 2 demonstrates that he abandoned that covenant.[3] Hence, Appellants have not identified evidence that supports facts essential to their position, *i.e.* that Appellee breached the terms of the policy by not defending the title to Lot 2.

Having found that Appellants could not acquire an interest in Lot 2 when they purchased 9 Cobalt, we discern no error on the part of the lower court in determining there were no genuine issues of material fact that would preclude the grant of summary judgment to Appellee. The 1961 agreement did not affect the insured title to 9 Cobalt, as any supposed interest created by that document was abandoned. Thus, the court did not err in determining the "interest" in land insured by the policy was accurately set out in the metes and bounds description provided in schedule C.

---

[3] That the subdivision agreement was recorded after these conveyances is of no moment. The evidence of record indicates James and Patricia Jones signed and executed the agreement on November 9, 1960. There is no evidence, and Appellants did not argue, that James and Patricia Jones personally caused the subdivision agreement to be recorded on June 27, 1961. The evidence of record more strongly supports the inference that James and Patricia Jones abandoned the restrictive covenant in March 1960, after gaining dominion over both parcels.

Furthermore, there was no error in finding Appellee owed no duty to Appellants in regard to Lot 2 under the policy. For these reasons, summary judgment in favor of Appellee was properly granted. Therefore, we shall not disturb the trial court's order.

Order affirmed.

Judge Olson Joins the majority.

Judge Strassburger Concurs in the Result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2016