2017 PA Super 365

COMMONWEALTH OF PENNSYLVANIA

v.

FREDERICK W. KARASH

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 263 WDA 2017

Appeal from the Judgment of Sentence January 24, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-SA-0000161-2016

BEFORE:  BOWES, LAZARUS, AND OTT, JJ.

OPINION BY BOWES, J.:                    **FILED NOVEMBER 16, 2017**

Frederick W. Karash appeals from the fine imposed following his summary conviction for one count of violating his duties as a motorist at a stop sign.  We reverse.

Appellant was charged with one summary offense for failing to stop at a stop sign.  The pertinent statute reads:

> **(b) Duties at stop signs.--Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic**, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway where the driver has a clear view of approaching traffic on the intersecting roadway before entering. If, after stopping at a crosswalk or clearly marked stop line, a driver does not have a clear view of approaching traffic, the driver shall, after yielding the right-of-way to any pedestrian in the crosswalk, slowly pull forward from the stopped position to a point where the driver has a clear view of approaching traffic. The driver shall yield the

right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection or junction of roadways and enter the intersection when it is safe to do so.

75 Pa.C.S. § 3323(b) (emphasis added).

The dispute in this case is whether the Commonwealth was obligated to present, in its case-in-chief, evidence as to whether a police officer directed Appellant to proceed through the stop sign. The answer to this question is dictated by whether the emphasized prefatory language operates as a proviso that supplies a defense that must be introduced and proven by Appellant, or whether it constitutes an element of the offense that must be proven by the Commonwealth. These issues present questions of law, and our standard of review is *de novo*. **See Commonwealth v. Miller**, 130 A.3d 1, 3 (Pa.Super. 2015).

We do not write on a blank slate. **Commonwealth v. Banellis**, 682 A.2d 383 (Pa.Super. 1996), interpreted the exact statutory language at issue herein in Appellant's favor. "Banellis argues that the language 'except when directed to proceed by a police officer' is an integral part of the offense and, therefore, the Commonwealth must produce evidence negating the exception as part of its burden of proof. We agree." *Id*. at 385. **Banellis** therefore directly controls.

The Commonwealth, adopting the opinion of the trial court in this matter, recognizes **Banellis**. However, the trial court, and by extension the

Commonwealth, interpret **Commonwealth v. Williams**, 872 A.2d 186 (Pa.Super. 2005), as overruling **Banellis**. The trial court reasoned, "[Appellant's] interpretation of the statute was originally accepted by a three judge panel of the Superior Court in [**Banellis**]. It has since been rejected by other Superior Court panels because it constitutes a judicial re-drafting of the statute which leads to an absurd result." Trial Court Opinion, 3/16/17, at 2-3. We disagree.

First, neither the trial court nor the Commonwealth recognizes that a panel of this Court cannot overrule the decision by another panel. Had **Williams** directly contradicted **Banellis**, we would be compelled to request *en banc* certification to resolve the conflict. However, **Williams** is distinguishable, as that case did not interpret 75 Pa.C.S. § 3323. Instead, the statute at issue in **Williams** was 75 Pa.C.S. § 3111, entitled Obedience to traffic-control devices, reading in pertinent part:

> **(a) General rule.--Unless otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control or regulate traffic,** the driver of any vehicle shall obey the instructions of any applicable official traffic-control device placed or held in accordance with the provisions of this title, subject to the privileges granted the driver of an emergency vehicle in this title.

75 Pa.C.S. § 3111 (emphasis added).[1]  The appellant therein asserted that the prefatory language was an element of the offense that must be proven beyond a reasonable doubt.  We expressed our disagreement in cursory fashion:

> Finally, we are not persuaded by Williams' argument that unless he was "otherwise directed by a uniformed police officer or any appropriately attired person authorized to direct, control, or regulate traffic," he did not violate the Vehicle Code. Specifically, he contends that this factor is an element of the offense under section 3111 and that, as such, it was the Commonwealth's burden to prove that he was not directed by a police officer while approaching the stop sign. While this may seem to be a crafty reworking of the statutory language of section 3111, we are not inclined to accept its absurd result. As the trial court and 75 Pa.C.S.A. § 3323 note, the duties at stop signs include: (1) stopping at a clearly marked stop line or intersection before entering it; (2) having a clear view of approaching traffic or yielding the right-of-way to any pedestrian in a crosswalk; (3) slowly pulling forward from stopped position to see clear view of approaching traffic; (4) and entering the intersection when it is safe to do so. The **exception** to following these duties is where an officer or authorized person has directed traffic in contravention of the normally observed procedure attendant to a traffic-control device. In other words, it would be an affirmative defense to a violation under section 3111 to prove that one had actually been "otherwise directed" to not obey the traffic rules. Having neither alleged nor proven this defense, Williams' argument fails.

---

[1] The definitions section, set forth at 75 Pa.C.S. § 102, defines "Official traffic-control devices" as: "Signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning or guiding traffic."

*Williams*, *supra* at 189 (emphasis in original, footnote omitted). The Commonwealth likewise adopts this position, positing that Appellant's argument is absurd, without reference to *Banellis*.

It is true that *Williams* cited § 3323 to reference a motorist's duties when approaching a stop sign, perhaps suggesting that the same analysis would apply. However, that language is clearly *dicta*, as the fact of the matter is that the defendant in *Williams* was not charged with violating § 3323. Furthermore, *Williams* did not cite, let alone discuss, *Banellis*. Moreover, the quoted paragraph represented the extent of the statutory analysis. In this regard, unlike the directly controlling precedent of *Banellis*, the *Williams* analysis did not account for the body of law interpreting whether a criminal statute contains a proviso.

A trio of cases from the Supreme Court of Pennsylvania illustrates the principles involved. First, in *Commonwealth v. McNeil*, 337 A.2d 840 (Pa. 1975), our Supreme Court interpreted a firearms offense, then codified at 18 P.S. § 4628(e), which stated as follows: "No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided." *Id*. at 843. *McNeil* held that, "The structure of the statute and the nature of the prohibition convince us that the absence of a license is an essential element of the crime." *Id*. at 843.

In **Commonwealth v. Bigelow**, 399 A.2d 392, 395 (Pa. 1979), the Supreme Court refused to extend that construction to 18 Pa.C.S. § 6108, which reads:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108. **Bigelow** noted that § 6108, unlike the statute analyzed in **McNeil**, employed an "unless" clause.

In section 6106, the phrase "without a license" appears without any words of exception. In section 6108, however, the material regarding licensure **is set off by the word of exception "unless", indicating it is in the nature of a proviso**. The purpose of a proviso is to "qualify, restrain or otherwise modify the general language of the enabling provision." Material placed in proviso is not an element of the crime but rather a matter of defense and need not be either plead or proved by the prosecution.

**Id**. at 482-83 (citations omitted, emphasis added). Thus, **Bigelow** drew a distinction between the words "except" and "unless."

Our brief review ends with **Commonwealth v. Lopez**, 565 A.2d 437 (Pa. 1989), wherein the High Court again interpreted a firearms statute. At that time, the crime at issue stated:

§ 6106. Firearms not to be carried without a license

- 6 -

(a) offense defined.-No person shall carry a firearm in any vehicle or concealed on or about his person, **except in his place of abode or fixed place of business**, without a license therefor as provided in this subchapter.,

(b) Exceptions. . . .

*Id*. at 438 (quoting 18 Pa.C.S. § 6106) (emphasis supplied by *Lopez*).

The *Lopez* analysis largely focused on *Bigelow*, due to the fact that the trial court relied on *Bigelow* in holding that the emphasized language was a proviso. *Lopez* stated:

> That reliance upon this Court's decision in *Commonwealth v. Bigelow, supra*, is clearly misplaced. In *Bigelow*, this Court considered the proper interpretation of section 6108 of the "Firearms & Other Dangerous Articles Act," 18 Pa.C.S. § 6108. At issue in that case was whether the Commonwealth had the burden of proving non-licensure as an element of the offense of "carrying firearms on public streets or public property in Philadelphia."
>
> . . . .
>
> The language of *Bigelow* itself evidences the improper application of that decision by the Superior Court in its interpretation of subsection (a) of section 6106. *Bigelow* specifically states that a proviso *modifies* the general language of the enabling provision. *Bigelow*, 484 Pa. at 482, 399 A.2d at 395, *citing Commonwealth ex rel. Margiotti v. Lawrence*, 326 Pa. 526, 531, 193 A. 46, 48 (1937). According to this reasoning, we conclude the language herein cannot be considered a proviso, but rather is clearly a part of the definition of the offense.

*Id*. at 440 (emphasis in original).

Unlike *Williams*, *Banellis* dealt with this body of law, and concluded that the prefatory except clause was a part of the offense.

> We are persuaded by . . . the preceding analogous appellate court cases that the "except clause" in section 3323(b) is an integral part of the offense. The clause, "Except when directed to proceed by a police officer ..." directly precedes the words "every driver of a vehicle approaching a stop sign shall stop...." Against the wording of this statute, it is obvious that the "except clause" is not divorced from the definition of the offense. In addition, there is no indication that the exception is in the nature of a proviso. *See Bigelow*, *supra*. The language of the exception aids in a more clear and accurate description of the offense. The structure of the statute convinces us that lack of traffic direction at a stop sign is an essential element of the crime. In reaching this decision, we must place upon the Commonwealth the burden of negating the foregoing exception.

*Banellis*, *supra* at 387–88 (citation omitted).

Hence, the statement in *Williams* finding absurd a construction that places the burden on the Commonwealth to establish that an officer did not direct the driver through the traffic sign is perhaps overstated. As we have indicated, *Williams* did not apply any of the analogous appellate precedents discussed *supra*, and therefore signals, at most, a disagreement with the reasoning employed by *Banellis*. We here quote a concurring opinion authored by then-Justice, now Chief Justice, Saylor explaining the interpretation of prefatory "except clauses:"

> With respect to language and structure, various interpretive presumptions are frequently employed. First, a distinction is drawn between exceptions fused integrally into the definition of the offense (and therefore deemed to reflect integral aspects of the forbidden conduct) and those styled as distinct provisos. As noted above, elements treatment has been favored for "except clauses," particularly those preceding the core description of the offense, versus an inclination toward construction of subsequent "unless clauses" as affirmative defenses. *See also Commonwealth v. Bigelow*, 484 Pa. 476, 483, 399 A.2d

392, 395 (1979) ("The United States Supreme Court has never required the prosecution to negate the language of a proviso."); ***Commonwealth v. Banellis,*** 452 Pa.Super. 478, 485, 682 A.2d 383, 387 (1996) (distinguishing a proviso from an "except clause").

***Commonwealth v. Bavusa***, 832 A.2d 1042, 1058–59 (Pa. 2003) (Saylor, J., concurring) (footnote and some citations omitted).

As such, we can reconcile **Williams** with **Banellis** on these grounds. The "unless otherwise directed" clause at issue in **Williams**, while not a subsequent clause appearing after the description of the forbidden conduct, nonetheless employs the "unless otherwise" construction. **See Bigelow**, **supra** at 395 (noting that the material regarding licensure was "set off by the word of exception 'unless'"). Therefore, **Williams** can be reconciled with **Banellis** on these grounds and the decisions are not in conflict. Accordingly, **Williams** holds only that the prefatory "unless otherwise directed" clause in § 3111 operates as a proviso, and merely suggests in *dicta* that the same

construction might apply to the instant statute.[2]  Since the two precedents are not in conflict, *Banellis* controls.[3]

Finally, we note that the trial court claims *Banellis* leads to absurd results because "it is highly unlikely a police officer would stop a vehicle for a stop sign violation when the driver was directed to proceed by a police officer or other authorized person."  Trial Court Opinion, 3/16/17, at 3-4. This analysis treads close to the dangerous belief that the mere fact the Commonwealth charges a citizen with an offense is itself evidence that the offense has been committed.  Consistent with its constitutional obligations, all the Commonwealth had to do in this case was ask the officer whether there was a police officer directing Appellant through the stop sign.  It failed to do so, and we therefore reverse pursuant to *Banellis*.

_____

[2] We also note that the Commonwealth does not offer any guidance on the issue of prospective versus retroactive application.  Herein, *Banellis* clearly controlled the instant proceedings.  Were this Court to overrule *Banellis* *en banc*, the question becomes how the ruling would apply to Appellant herein, in that the trial court failed to apply the correct law.  In this regard, the Commonwealth could not appeal a finding of not guilty.

[3] The trial court holds that, in the alternative, the officer's testimony implicitly established that element.  "Officer Kowalski did not testify he saw an authorized person waving Appellant through the intersection which means *sub silentio* there was no such person."  While circumstantial evidence may satisfy the elements of an offense, the Commonwealth cannot meet its burden through mere conjecture.  *See Banellis*, *supra* at 388 ("The Commonwealth's only witness, Officer Mecca, testified that he observed Banellis exit the ramp and just continue right through the stop sign. The Commonwealth, however, failed to address the issue of whether Officer Mecca was directing traffic at this particular intersection.").

Conviction reversed.  Appellant is discharged.

Judge Lazarus concurs in the result.

Judge Ott files a concurring statement in which Judge Lazarus joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2017