J-E04002-17

2018 PA Super 104

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SARAH KATHERINE MARKUN | : | |
| | : | |
| Appellant | : | No. 1009 EDA 2016 |

Appeal from the Judgment of Sentence March 1, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0006444-2015

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
          SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., and DUBOW, J.

OPINION BY BOWES, J.:                               **FILED MAY 01, 2018**

Sarah Katherine Markun appeals from the judgment of sentence of one year of probation imposed following her conviction for possession of a controlled substance.  The sole issue on appeal is whether Appellant waived the immunity provisions contained within the Drug Overdose Response Act, 35 P.S. § 780-113.7 (hereinafter "the Act"), by failing to assert that issue in a pre-trial motion.  We conclude that immunity under the Act is not a defense and is nonwaivable.  We further find that the Act serves to bar the instant prosecution.  Hence, we vacate the conviction.

The trial court set forth the facts underlying this appeal in its Pa.R.A.P. 1925(a) opinion, which we adopt herein:

> Twenty-four year old Sarah Markun, the Defendant in the above matter, was found unconscious in a Motel 6 in Tinicum, Delaware County on April 10, 2015 at about 1:30 p.m. Apparently housekeeping personnel called 911 and reported a medical emergency when she was discovered. She was evaluated and treated at the motel by emergency medical responders and thereafter transported by the EMTs to a nearby hospital.

Trial Court Opinion, 6/7/16, at 1-2 (citation to transcript omitted). Appellant was charged with possession of heroin, a controlled substance.

Appellant filed a pre-trial motion to suppress statements made in the presence of the investigating police officer, which was denied following an evidentiary hearing, and Appellant proceeded to a non-jury trial incorporating the suppression testimony. She was convicted, sentenced, and filed a notice of appeal. Appellant complied with the order to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal wherein she raised, for the first time, the applicability of the Act. The trial court determined that Appellant was required to raise immunity in a pre-trial motion, and therefore deemed the issue waived.

A panel of this Court, over this author's dissent, determined that Appellant waived her immunity claim due to her failure to preserve the issue in a pre-trial motion. Appellant sought *en banc* reargument, which was granted. Appellant raises the following novel issue for our review:

> Whether the lower court was without authority to convict or sentence Appellant for possession of a controlled substance since

she was immune from prosecution pursuant to 35 P.S. § 780-113.7?

Appellant's brief at 5.

Both parties identify the standard of review applicable to statutory interpretation as governing our resolution of this issue. When addressing a question of statutory construction, our standard of review is *de novo* and the scope of our review is plenary. ***Commonwealth v. Barbaro***, 94 A.3d 389, 391 (Pa.Super. 2014) (citation omitted). Interpretation of a statute "is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, which has as its paramount tenet that '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.'" ***Commonwealth v. Hart***, 28 A.3d 898, 908 (Pa. 2011) (quoting 1 Pa.C.S. § 1921(a)).

We begin by setting forth the full text of the statute:

§ 780-113.7. Drug overdose response immunity

(a) A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) and for a violation of probation or parole if the person can establish the following:

(1) law enforcement officers only became aware of the person's commission of an offense listed in subsection (b) because the person transported a person experiencing a drug overdose event to a law enforcement agency, a campus security office or a health care facility; or

(2) all of the following apply:

(i) the person reported, in good faith, a drug overdose event to a law enforcement officer, the 911 system, a campus security officer or emergency services personnel and the report was made on the reasonable belief that another person was in need of immediate medical attention and was necessary to prevent death or serious bodily injury due to a drug overdose;

(ii) the person provided his own name and location and cooperated with the law enforcement officer, 911 system, campus security officer or emergency services personnel; and

(iii) the person remained with the person needing immediate medical attention until a law enforcement officer, a campus security officer or emergency services personnel arrived.

(b) The prohibition on charging or prosecuting a person as described in subsection (a) bars charging or prosecuting a person for probation and parole violations and for violations of section 13(a)(5), (16), (19), (31), (32), (33) and (37).

(c) Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who transported or reported and remained with them may not be charged and is entitled to immunity under this section.

(d) The prohibition on charging or prosecuting a person as described in this section is limited in the following respects:

(1) This section may not bar charging or prosecuting a person for offenses enumerated in subsection (b) if a law enforcement officer obtains information prior to or independent of the action of seeking or obtaining emergency assistance as described in subsection (a).

(2) This section may not interfere with or prevent the investigation, arrest, charging or prosecution of a person for the delivery or distribution of a controlled substance, drug-induced homicide or any other crime not set forth in subsection (b).

(3) This section may not bar the admissibility of any evidence in connection with the investigation and prosecution for any other prosecution not barred by this section.

(4) This section may not bar the admissibility of any evidence in connection with the investigation and prosecution of a crime with regard to another defendant who does not independently qualify for the prohibition on charging or prosecuting a person as provided for by this section.

(e) In addition to any other applicable immunity or limitation on civil liability, a law enforcement officer or prosecuting attorney who, acting in good faith, charges a person who is thereafter determined to be entitled to immunity under this section shall not be subject to civil liability for the filing of the charges.

35 P.S. § 780-113.7 (footnote omitted).

Instantly, the ultimate issue is whether the Act's immunity provisions are subject to waiver. A critical component of that determination is whether the Act operates as a defense to the underlying crime.

Appellant argues that immunity is not a defense and analogizes it to subject matter jurisdiction, which cannot be waived. "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law." *Midwest Fin. Acceptance Corp. v. Lopez*, 78 A.3d 614, 627 (Pa.Super. 2013) (citation omitted). Appellant reaches this conclusion by focusing on

the language of subsection (a), which states that a person "may not be charged and shall be immune from prosecution[.]" The statute therefore "effectively strips criminal courts of authority to adjudicate cases where defendants are immune." Appellant's brief at 15. Thus, Appellant views the Act as a restriction on the trial court's competency to address the matter, and hence not a defense to the crime. Additionally, because subject matter jurisdiction cannot be waived, Appellant argues that the Act applies on its terms, requiring discharge.

The Commonwealth responds that subject matter jurisdiction is an inapt analogy, as Appellant's possession of controlled substances remained a crime despite the potential applicability of the Act. The Commonwealth casts the availability of immunity as a waivable defense, and, consequently Appellant was required to litigate the issue at the trial court level. Hence, her failure to raise the issue prior to conviction is subject to the normal rules of waiver, including the requirement that the defendant must raise and preserve defenses at trial.

This issue is a matter of first impression and we begin our analysis by examining the statutory language. "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Commonwealth v. Cullen-Doyle*, 164 A.3d 1239, 1242 (Pa. 2017) (quoting *Commonwealth v. Corban Corp.*, 957 A.2d 274, 276 (Pa. 2008)).

At the outset, we note that the Commonwealth's view of the Act as a defense has superficial appeal due to the rather limited circumstances in which immunity appears in the criminal domain. Perhaps the most common is a witness receiving immunity in exchange for his or her testimony, which serves to override the privilege against self-incrimination. **See** 42 Pa.C.S. § 5947.

Our research corroborates the notion that immunity outside of the testimony context is unusual, although there are some examples, such as immunity from criminal liability for special circumstances. For example, 50 P.S. § 7114, a provision of the Mental Health Procedures Act, applies to decisions made by certain individuals regarding "an application for voluntary treatment or for involuntary emergency examination and treatment" and states those individuals "shall not be civilly or criminally liable[.]" 50 P.S. § 7114(a). **See also** 75 Pa.C.S. § 3755(b) (supplying immunity from civil and criminal liability "for withdrawing blood or obtaining a urine sample and reporting test results to the police pursuant to this section or for performing any other duty imposed by this section"); 35 P.S. § 4501 ("All owners of rifle, pistol . . . or other ranges in this Commonwealth shall be exempt and immune from . . . criminal prosecution in any matter relating to noise or noise pollution resulting from the normal and accepted shooting activity on ranges.").

At least two other crimes contain immunity provisions. The first is ecoterrorism, which has the following provision:

> **(c.1) Immunity.--**A person who exercises the right of petition or free speech under the United States Constitution or the Constitution of Pennsylvania on public property or with the permission of the landowner where the person is peaceably demonstrating or peaceably pursuing his constitutional rights shall be immune from prosecution for these actions under this section or from civil liability under 42 Pa.C.S. § 8319 (relating to ecoterrorism).

18 Pa.C.S. § 3311. While utilizing the "shall be immune from prosecution" language, this language otherwise bears little resemblance to the Act.

The other crime offers a far greater parallel to the Act. The immunity subsection appears within the body of 18 Pa.C.S. § 6308, which states in pertinent part:

> § 6308. Purchase, consumption, possession or transportation of liquor or malt or brewed beverages
>
> **(a) Offense defined.--**A person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes, possesses or knowingly and intentionally transports any liquor or malt or brewed beverages, as defined in section 6310.6 (relating to definitions). For the purposes of this section, it shall not be a defense that the liquor or malt or brewed beverage was consumed in a jurisdiction other than the jurisdiction where the citation for underage drinking was issued.
>
> . . . .
>
> **(f) Exception for person seeking medical attention for another.**--A person shall be immune from prosecution for consumption or possession under subsection (a) if he can establish the following:
>
> > (1) The only way law enforcement officers became aware of the person's violation of subsection (a) is

because the person placed a 911 call, or a call to campus safety, police or emergency services, in good faith, based on a reasonable belief and reported that another person was in need of immediate medical attention to prevent death or serious injury.

(2) The person reasonably believed he was the first person to make a 911 call or a call to campus safety, police or emergency services, and report that a person needed immediate medical attention to prevent death or serious injury.

(3) The person provided his own name to the 911 operator or equivalent campus safety, police or emergency officer.

(4) The person remained with the person needing medical assistance until emergency health care providers arrived and the need for his presence had ended.

18 Pa.C.S. § 6308.

That crime, concerning alcohol and underage persons, has obvious parallels to the narcotics offense at issue herein both in language and purpose. Subsection (f) of § 6308 encourages a person who is violating the law to call authorities when faced with a medical emergency. In contrast to the Act, however, subsection (f) appears within the body of the criminal statute itself, does not forbid the initiation of charges, and uses the word "exception."[1] There is no case law associated with this subsection, perhaps

---

[1] When analyzing the language of a criminal statute, courts analyze whether a phrase constitutes an element of the crime, which the Commonwealth must negate beyond a reasonable doubt, versus a *proviso* in the nature of a

*(Footnote Continued Next Page)*

because law enforcement officers refrain from seeking criminal sanctions in such situations.

As applied to the narcotics offenses covered by the Act, it is illogical to state that persons seeking its application are exempt from a duty not to commit those crimes. There is no dispute that the Commonwealth has proved the legal sufficiency of these charges beyond a reasonable doubt. Nor is there any doubt that, had the police lawfully encountered Appellant under other circumstances, she would be subject to prosecution. It is the particular factual circumstance that resulted in Appellant's contact with law enforcement that shields Appellant from the normal consequences attendant to her possession of heroin.

Thus, we agree that the Act resembles a criminal defense. Simultaneously, we cannot ignore that the Legislature chose the word "immunity." The Statutory Construction Act states:

> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

*(Footnote Continued)* ────────────────

defense. **See Commonwealth v. Karash**, 175 A.3d 306 (Pa.Super. 2017); **Commonwealth v. Bavusa**, 832 A.2d 1042, 1058–59 (Pa. 2003) (Saylor, J., concurring) (discussing distinction "between exceptions fused integrally into the definition of the offense (and therefore deemed to reflect integral aspects of the forbidden conduct) and those styled as distinct provisos"). Herein, we do not deal with a question of the sufficiency of the evidence for the underlying crime of possession.

> (b) General words shall be construed to take their meanings and be restricted by preceding particular words.

1 Pa.C.S. § 1903.

The fact that the Act does not employ the term "defense" is strong evidence that the Act was not intended to create a defense to these charges. The Legislature is perfectly capable of using the word "defense" and supplying defenses within the body of a crime when that is its intention. **See** 18 Pa.C.S. § 6308; 18 Pa.C.S. § 3503(c) ("It is a defense to prosecution under this section . . . . "). It would be incongruous for the Legislature to signal its intent to establish a defense by discarding the very word that would clearly serve that purpose, and by enacting a new statute instead of simply amending § 780-113 to provide defenses to particular crimes. Hence, we find that there is an incompatibility between the Act's function and its label.

Moving beyond the Legislature's use of the word "immunity," we find that the remainder of the statutory language likewise offers no clear answer as to whether the Act was intended to supply a defense. At this juncture, we repeat subsection (a):

> A person may not be charged and shall be immune from prosecution for any offense listed in subsection (b) and for a violation of probation or parole if the person can establish the following:

35 P.S. § 780-113.7(a).

Analyzing this language, we note that the clause preceding "if" places a limitation on the power of law enforcement officials by prohibiting criminal proceedings in a particular set of circumstances. This point favors an interpretation that the Act does not merely provide a defense.

Simultaneously, the "if" construction following this prefatory clause delineates the set of circumstances that triggers that very limitation, and the text requires the charged individual to demonstrate those circumstances. The statute does not require the Commonwealth to establish that immunity does not apply, but places the burden on the defendant to establish the Act's applicability. Thus, this latter clause is directed at the defendant who is facing charges, and favors the Commonwealth's interpretation that the Act operates as a defense. Thus, the language of the Act is inherently ambiguous.

We find further ambiguity in the fact that the first clause employs both "may" and "shall" and directs those terms to different stages of the criminal justice process. As a matter of textual analysis, the word "may" implies a permissive power, while "shall" is a mandatory limitation. *See A. Scott Enter., Inc. v. City of Allentown*, 142 A.3d 779, 787 (Pa. 2016) ("Although 'may' can mean the same as 'shall' where a statute directs the doing of a thing for the sake of justice, it ordinarily is employed in the permissive sense.") (citation omitted). The Act applies the word "may" to the charging decision, while "shall" is applicable to "immunity from

prosecution." The use of both terms evidences a conscious decision to attach the distinct meanings to each word. **See O'Neill v. Borough of Yardley**, 565 A.2d 502, 504 (Pa.Cmwlth. 1989) ("[T]he legislature used both 'may' and 'shall' in subsection (c) which indicates to us that it was conscious of the distinct meaning of each word.").[2]

Placing a limitation upon the Commonwealth's charging power expands the scope of the Act's protections since it means that, in some circumstances, the individual will never be called to court. Concomitantly, the "shall be immune from prosecution" language becomes relevant only when the Commonwealth has elected to file charges, and it obligates the defendant to establish the Act's applicability. The Legislature did not state that the authorities "shall not" charge in the event that the Act applies. Therefore, the Commonwealth has discretion in charging matters, with the defendant retaining the ability to seek immunity.

However, further complicating matters is the fact that subsection (a) speaks in the conjunctive while other portions of the statute are phrased in the disjunctive: "**The prohibition on charging or prosecuting** a person is limited in the following respects[.]" 35 P.S. § 780-113.7(d) (emphasis added). This phrasing indicates that the prohibition applies to both charging

---

[2] "Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive." **In re Estate of Brown**, 30 A.3d 1200, 1205 (Pa.Super. 2011) (citation omitted).

and continuing prosecution, suggesting that "may" and "shall" carry identical meanings.

We therefore find that the statute fails to offer a clear answer as to the Legislature's intent and is materially ambiguous, permitting an examination beyond the plain text of the statute.

> When a statute is ambiguous, we may go beyond the relevant texts and look to other considerations to discern legislative intent. "Where statutory or regulatory language is ambiguous, this Court may resolve the ambiguity by considering, *inter alia,* the following: the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute." ***Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.,*** ––– Pa. ––––, 131 A.3d 977, 984 (2016), *citing* 1 Pa.C.S. § 1921(c).

***Commonwealth v. Giulian***, 141 A.3d 1262, 1267–68 (Pa. 2016).

We hold that the aforementioned considerations warrant a conclusion that the Legislature did not intend for immunity to operate as a defense to the charges.[3] The occasion, necessity, and circumstances surrounding the Act's enactment were aptly set forth by this Court in ***Commonwealth v. Lewis***, --- A.3d ---, 2018 PA Super 46 (Pa.Super. 2018).

> In an effort to prevent overdose deaths, the Legislature provided for immunity from prosecution for certain crimes when a person has a reasonable belief someone is suffering from an overdose

---

[3] As discussed *infra*, we separate that issue from whether we may address the claim as a matter of appellate procedure.

and contacts local authorities. The Act provides this immunity to both the reporter and the victim, so long as several conditions are met.

. . . .

The Legislature amended the Controlled Substance, Drug, Device and Cosmetic Act by enacting the Drug Overdose Response Immunity statute. The amendment passed in the face of a burgeoning humanitarian crisis across the United States in general and Pennsylvania in particular. In the United States as a whole, drug overdose deaths "nearly tripled during 1999–2014." Rudd RA, Seth P, David F, Scholl L., *Increases in Drug and Opioid–Involved Overdose Deaths—United States, 2010–2015*. MMWR Morb Mortal Wkly Rep 2016; 65:1445–1452, available at https://www.cdc.gov/mmwr/volumes/65/wr/mm655051e1.htm?s_cid=mm6 55051e1_w, retrieved 1/23/18. From 1999 to 2010, Pennsylvania's rate nearly doubled. **See** *Prescription Drug Abuse: Strategies to Stop the Epidemic*, available at http://healthyamericans.org/reports/drugabuse2013/, retrieved 1/23/18. As of 2010, Pennsylvania's drug overdose mortality rate was 14th highest in the country. **See id.** After signing the Act into law, then-Governor Tom Corbett observed, "[t]he bill I am signing today will save lives and ensure those who help someone in need aren't punished for doing so." Pa. Painkiller–Heroin Crisis: Corbett Signs Bill Intended to Save Lives, available at http://www.pennlive.com/midstate/index.ssf/2014/09/corbett _heroin_good_ samaritan.html, retrieved 1/23/18.

This public health crisis continues unabated. In fact, "[m]ore than 63,600 lives were lost to drug overdose in 2016, the most lethal year yet of the drug overdose epidemic, according to ... the US Centers for Disease Control and Prevention." Opioids Now Kill More People Than Breast Cancer, available at http://www.wfmz.com/health/opioids-now-kill-more-peoplethan-breast-cancer/675807470, retrieved 2/21/18.

To achieve its intent of saving lives, the Act provides immunity from prosecution for persons who call authorities to seek medical care for a suspected overdose victim.

*Id*. at 1-3.

In this light, we conclude that the Legislature did not intend for the Act to operate as a defense. The purpose of the statute is to encourage calls to the authorities when an overdose victim requires immediate aid, thereby saving lives. It achieves this end by addressing the obvious concern on the part of reporters that a call to 911 will result in criminal charges for themselves or the overdose victim.

The Act's purpose explains the conflicting statutory language discussed *supra*. We find that the Legislature sought to encourage persons, who may be fellow drug users themselves, to report overdoses by guaranteeing that criminal punishments will not normally follow. Moreover, the Legislature intended for prosecutors and police to refrain from filing charges when sorting through the aftermath of the unfortunately all-too-common overdose. The statute discourages the authorities from commencing the criminal justice process, *i.e.* by placing a limitation upon the charging power, to provide more incentive for reporters to call. In **Commonwealth v. Carontenuto**, 148 A.3d 448 (Pa.Super. 2016), we rejected the Commonwealth's argument that an overdose victim is not entitled to immunity if the reporting person committed no crime. The Honorable Eugene B. Strassburger, III, filed a concurring opinion, stating, "The suggestion that a person present at a crime scene could have no fear of prosecution does not comport with the real world." **Id**. at 454 (Strassburger*,* J., concurring). It would significantly undercut the statute's

goal to conclude, as the Commonwealth urges, that the Act merely provides a defense, thereby requiring an overdose victim or a reporter to litigate the issue of immunity.[4] We find that the statute clearly contemplates that a large number of these cases will never reach the courtroom halls; hence, the prohibition against **charging** a person.[5]

Further support for our conclusion that the Act contemplates that law enforcement officials are encouraged in the first instance not to initiate charges is found in subsection (e) of the Act:

_____

[4] As Appellant persuasively states: "If the judiciary permits police to criminally charge obviously immune individuals with drug possession, jail them, and force them to later plead and prove their immunity in court, it will effectively reinstate the disincentive against reporting overdose events that the [L]egislature sought to eliminate by passing Section 780-113.7." Appellant's brief at 17. We agree. The consequences of the interpretation offered by the Commonwealth is a pertinent factor in ascertaining the Legislature's intent.

[5] As we have moved beyond the statutory text, we note that the legislative history corroborates our analysis that the intent was for the Commonwealth not to file charges where the Act applies. Mr. Joseph Hackett, a member of the Pennsylvania House of Representatives from Delaware County, offered an amendment to the Act's statutory language. Among other changes, the amendment inserted the language "may not be charged," and struck the term "limited immunity" in favor of "prohibition on charging or prosecuting a person." Mr. Hackett stated the following in support of the amendment:

> Mr. Speaker, this amendment clarifies a little portion of the bill where instead of just prosecution, it addresses the line - changes it to "will not be charged." **So it starts at the beginning point when law enforcement first comes into this issue and not wait until after we get to that prosecution issue**.

Pennsylvania House Journal, 2014 Reg. Sess. No. 42 (emphasis added).

(e) In addition to any other applicable immunity or limitation on civil liability, a law enforcement officer or prosecuting attorney who, acting in good faith, charges a person who is thereafter determined to be entitled to immunity under this section shall not be subject to civil liability for the filing of the charges.

35 P.S. § 780-113.7.

Thus, the statute contemplates that charges will only be filed when law enforcement authorities, acting in good faith, believe that the individual is **not** entitled to the Act's protections. The Legislature was also obviously concerned that competing law enforcement goals would be frustrated if the Act precluded charges every time an overdose was reported. Among other restrictions, the Act "may not bar charging or prosecuting a person for offenses enumerated in subsection (b) if a law enforcement officer obtains information prior to or independent of the action of seeking or obtaining emergency assistance as described in subsection (a)." 35 P.S. § 780-113.7(d)(1). Doubtlessly, there will be situations in which application of the Act will be unclear. In such cases, the Commonwealth is permitted to exercise its discretionary power by initiating charges despite the possible applicability of the Act, but a defendant is entitled to raise the issue of immunity in response.[6]

---

[6] We recognize that there may be cases in which the applicability of the Act turns on a mixed determination of facts and law. Our holding that the Act's protections are not subject to waiver does not mean that relief is automatic, as the statute requires that the person establish the Act's applicability.

- 18 -

Having established that the Legislature did not intend for the Act to operate as a defense, we now address the remaining question of whether the issue is nonetheless subject to normal waiver principles. The Commonwealth notes that our review "is premised on the requirement that litigants preserve their arguments for appeal." Commonwealth's brief at 8. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Under this view, we would be powerless to review whether the Act applies, even if the Legislature did not intend for the Act to operate as a defense. This argument implicates our ability, as an appellate court, to address the claim.

Before discussing that matter, we note our belief that the Act explicitly discourages procedural gamesmanship whereby the Commonwealth files charges and places the onus on the defendant to raise the Act as a shield in cases where the Act clearly applies. Relatedly, we are troubled by the Commonwealth's steadfast refusal to take a position on whether the Act's protections would apply if Appellant had timely raised the issue. Instead, the Commonwealth elects to analogize its decision to charge Appellant, despite the potential applicability of the Act, to a criminal prosecution initiated where an arrest was made without probable cause, where evidence was obtained in violation of the Fourth Amendment, or where a statute of limitations may have applied. In all those cases, the claims must be raised and preserved at trial.

These analogies are unpersuasive. Regarding the lack of probable cause, a prosecutor has an obligation not to file charges if there is no probable cause to believe a crime has been committed, which is distinct from the question of whether an arrest warrant is unsupported by probable cause. Pennsylvania Rules of Professional Conduct 3.8(a) ("The prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause[.]"). Second, the comparison to a defendant's failure to seek suppression of impermissibly obtained items or a failure to raise a statute of limitations fares no better, as the primary criticism against the exclusionary rule and related theories of relief is that the criminal goes free due to errors by the authorities that have nothing to do with guilt or innocence. *See **Herring v. United States***, 555 U.S. 135, 151 (2009) ("The Court's discussion invokes a view of the exclusionary rule famously held by renowned jurists Henry J. Friendly and Benjamin Nathan Cardozo. . . . . In words often quoted, Cardozo questioned whether the criminal should go free because the constable has blundered.") (quotation marks and citation omitted) (Ginsburg, J., dissenting).

The Act has nothing to do with guilt or innocence, thereby lending some weight to the Commonwealth's argument that its applicability may be waived. The counter to that weight is the fact that the Legislature, which is far more attuned to the ongoing opioid crisis, has placed its thumb on the scale and expressed a clear desire to sacrifice the prosecution of minor

narcotics offenses in order to save lives. The Legislature sought to accomplish that goal by directing law enforcement to refrain from **charging** persons where the Act applies. The Commonwealth does not account for that circumstance, and its brief lacks any suggestion that the Act would not apply if Appellant had raised the issue. Instead, the Commonwealth informs us that "The fact that the Statute may have applied does not change the simple fact that this was a criminal matter." Commonwealth's brief at 10. True, but if the Act does apply, then the charges should not have been filed in the first place. The Commonwealth's brief utterly fails to address that point. While the statute grants discretion to file charges if there is a good faith belief that the Act does not apply, the Commonwealth transforms that discretion into a license to pursue winning the case at all costs, which is arguably incompatible with its special duties.[7]

---

[7] In **Commonwealth v. Chmiel**, 173 A.3d 617 (Pa. 2017), Justice Donohue authored a concurring opinion discussing the prosecutor's role, which we quote herein:

> Prosecutors have a unique role in our criminal justice system. This Court has codified the "Special Responsibilities of a Prosecutor" to provide that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate." Pennsylvania Rules of Professional Conduct 3.8 (comment). We have further observed that "[a] defendant does not have a right not to be prosecuted; he does, however, have a right to have his case reviewed by an administrator of justice with his mind on the public purpose, not by an advocate whose judgment may be blurred by subjective reasons." **Commonwealth v. Eskridge**, 529 Pa. 387, 604 A.2d

*(Footnote Continued Next Page)*

Notwithstanding, we agree that the failure to preserve the issue poses an impediment to our ability to review the claim pursuant to Pa.R.A.P. 302. That prohibition is not absolute, however. When reviewing criminal judgments, it is well-settled that issues pertaining to the legality of the sentence cannot be waived. Since that principle does not extend to the validity of the conviction, *Commonwealth v. Norris*, 446 A.2d 246, 252 n.9 (Pa. 1982), it offers no relief. Additionally, subject matter jurisdiction is non-waivable, a theory discussed, and rejected, *supra*.

Moving beyond the criminal context, our Supreme Court has held that the government's sovereign immunity from lawsuits cannot be waived and may be raised for the first time on appeal. *See McShea v. City of Philadelphia*, 995 A.2d 334, 341 (Pa. 2010) ("The clear intent of the Tort Claims Act was to insulate the government from exposure to tort liability. Tort immunity is a non-waivable, absolute defense.") (citations omitted). *McShea* cited *In re Upset Sale of Properties*, 560 A.2d 1388 (Pa. 1989) for that proposition. That case states:

*(Footnote Continued)* _____

> 700, 701 (1992) (citing *Commonwealth v. Dunlap*, 335 A.2d 364, 368 (Pa. Super. 1975) (Hoffman, J., dissenting)); *see also Commonwealth v. Briggs*, 608 Pa. 430, 12 A.3d 291, 331 (2011).

*Id*. at 631 (Donohue, J., concurring). "The prosecutor's duty to seek justice trumps his or her role as an advocate to win cases for the Commonwealth." *Id*.

The tax claim unit has raised their governmental immunity for the first time on appeal. They claim they are not only immune but that their immunity is not waivable, even if they negligently failed to do so before. Perhaps here is one reason their immunity cannot be waived; a governmental agency cannot be put at the mercy of negligent or agreed waiver by counsel of a substantive right designed to protect its very existence. Such negligence can spread, pebble in a pond, until the governmental agency would be engulfed in a tidal wave of liability.

. . . .

Defense of governmental immunity is an absolute defense, directly analogous to our holding in workmen's compensation cases and is not waivable, *LeFlar v. Gulf Creek Industrial Park*, 511 Pa. 574, 515 A.2d 875 (1986), nor is it subject to any procedural device that could render a governmental agency liable beyond the exceptions granted by the legislature.

*Id*. at 1389.

For the following reasons, we find that the same principles apply to challenges under this Act. Appellant obviously does not enjoy sovereign immunity from all criminal prosecutions absent her consent to being charged. In this regard, the Act is more analogous to the concept of qualified immunity, which is subject to waiver principles. As described by the United States Supreme Court:

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. . . .

- 23 -

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." **Mitchell v. Forsyth**, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." **Anderson v. Creighton**, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." **Hunter v. Bryant**, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam)*.

**Pearson v. Callahan**, 555 U.S. 223, 231–32 (2009).

Analogously, the qualification to Appellant's immunity in this case turns on the Act. **Pearson**'s description of qualified immunity as providing immunity from suit, rather than a mere defense to liability, describes this situation. Moreover, that immunity was effectively lost when, as here, the case was erroneously permitted to go to trial due to Appellant's failure to raise the claim in pre-trial proceedings. Furthermore, we agree it was far preferable to have this question settled at a much earlier stage in the litigation.

However, there is one key feature of qualified immunity that does not apply to the Act: The plaintiff seeking damages from an official has no obligation whatsoever not to file suit, even if the defendant has qualified immunity. Herein, it is only partially correct to say that the case erroneously went forward due to Appellant's failure to raise the defense, as the Commonwealth also bore a duty not to bring charges if the Act applied.

Accordingly, we find that extending the Supreme Court's sovereign immunity principles is warranted. As set forth at length *supra*, the clear intent of the Legislature was to shield Appellant from any exposure to criminal liability if the Act applies.[8] That the Act grants the Commonwealth discretion to file charges is simply a byproduct of the fact that its applicability will not be clear in all cases, and, in those cases, the defendant must establish that it applies. When it does, the defendant is entitled to immunity from prosecution and is therefore "insulate[d] . . . from exposure[.]" **McShea**, *supra*. The Commonwealth's failure to acknowledge its duty to refrain from charging if the Act applies, combined with Appellant's failure to raise the issue in a timely fashion has "spread, pebble in a pond," **In Re Upset Sale**, *supra*, to this Court. The same policy reasons permitting the government to raise sovereign immunity at any stage in the proceedings applies to this matter. Accordingly, we may review the claim.

What remains is whether the Act actually applies. Keeping in mind that it is Appellant's duty to prove its applicability, we hold that she has met

_____

[8] Our extension of these principles relies upon that key feature, and therefore we do not agree with the Commonwealth's assertion that creating an exception to the waiver doctrine in these circumstances would logically justify creating exceptions for other types of claims, *e.g.* suppression claims and statute of limitations claims. As discussed *supra*, in those situations the Commonwealth has no duty to refrain from filing charges, whereas here the Act places the duty on the Commonwealth in the first instance to refrain from even initiating charges.

her burden. Appellant argues that the Act applies as a matter of law, and we find that the record clearly establishes the facts necessary for application of § 780-113.7(c): "Persons experiencing drug overdose events may not be charged and shall be immune from prosecution as provided in subsection (b) if a person who transported or reported and remained with them may not be charged and is entitled to immunity under this section." According to § 780-113.7(a)(2), Appellant was entitled to immunity from prosecution for a violation of possession of controlled substance if the following facts are present. First, someone "reported, in good faith, a drug overdose event," to, among other persons, "a law enforcement officer [or] the 911 system." 35 P.S. § 780-113.7(a)(2)(i). Second, the person who made the report did so based upon a reasonable belief that someone else needed medical attention to avoid death or serious bodily injury due to a drug overdose event. *Id*. Finally, the reporting person must have "provided his own name and location and cooperated with the law enforcement officer [or] 911 system" and then "remained with the person needing immediate medical attention until a law enforcement officer . . . or emergency services personnel arrived." 35 P.S. § 780-113.7(a)(2)(ii-iii).

All of those facts are present. A motel employee discovered Appellant unconscious in her room and called 911. Officer Robert Loder of the Tinicum Police Department responded to the call and went to Appellant's room, where emergency medical personnel were already treating her. The record

further establishes that the reporter had a reasonable belief that Appellant was suffering a drug overdose event. That is statutorily defined to include any "acute medical condition," which includes, but is not limited to, "severe physical illness" or a coma when the condition is the "result of consumption" of a controlled substance that causes an adverse reaction. 35 P.S. § 780-113.7(f). "A patient's condition shall be deemed to be a drug overdose if a prudent layperson, possessing an average knowledge of medicine and health, would reasonably believe that the condition is in fact a drug overdose and requires immediate medical attention." *Id*.

Herein, Officer Loder overheard Appellant tell medical staff that she had become unconscious due to the consumption of heroin. Since the motel employees discovered Appellant in an unconscious state, they prudently concluded that she was suffering from an event requiring medical intervention, which could have resulted in serious bodily injury or death. That event was, in fact, caused by the consumption of heroin.

The motel employees were immune from having criminal charges filed against them under § 781-113.7. Appellant concomitantly was entitled to application of 35 P.S. § 780-113.7(c). *Carontenuto*, *supra* (reporting person need not have committed a crime). Therefore, she "shall be entitled to immunity."

Judgment of sentence vacated. Appellant is discharged.

President Judge Emeritus Bender joins the opinion.

- 27 -

Judge Panella joins the opinion.

Judge Shogan joins the opinion.

Judge Lazarus joins the opinion.

Judge Olson joins the opinion.

Judge Stabile joins the opinion.

Judge Dubow joins the opinion.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/18