J-S34040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN LEONARD VERBECK | : | |
| | : | |
| Appellant | : | No. 1947 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 1, 2019
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0002013-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:                    **FILED APRIL 09, 2021**

Steven Leonard Verbeck appeals from the November 1, 2019 judgment of sentence entered by the Court of Common Pleas of Centre County, which followed his non-jury trial conviction of four separate counts of driving under the influence ("DUI") - controlled substance, one count of possession of a small amount of marijuana, DUI – general impairment, possession of drug paraphernalia, failing to yield right, driving on roadways laned for traffic, careless driving, and failure to use a safety belt.[1] The court sentenced Verbeck to five years of intermediate punishment, with 120 days to be served on in-home detention. After thorough review, we vacate Verbeck's judgment of sentence pursuant to **Commonwealth v. Chichkin**, 232 A.3d 959 (Pa. Super.

---

[1] **See** 75 Pa.C.S.A. §§ 3202(d)(1)(i), (iii), (2), and (3); 35 P.S. § 780-113(a)(31)(i); 75 Pa.C.S.A. § 3802(a)(1); 35 P.S. § 780-113(a)(32); 75 Pa.C.S.A. § 3302; 75 Pa.C.S.A § 3309(1); 75 Pa.C.S.A. § 3714; 75 Pa.C.S.A. § 4581(a)(2)(ii), respectively.

2020), and remand for resentencing, but affirm as to all other issues raised on appeal.

In summary, while on vehicle patrol, two Pennsylvania State Police troopers observed two vehicles being driven in the opposite direction. The two troopers noticed that Verbeck's vehicle, the second of the two, entered their lane of travel by crossing well over the double-yellow line. As Verbeck's vehicle approached and then passed the troopers' vehicle, it straddled the double-yellow line.

Immediately thereafter, the troopers performed a U-turn and pursued Verbeck's vehicle. The troopers then initiated their emergency lights, which resulted in a traffic stop of Verbeck's vehicle. During the stop, the troopers smelled both marijuana and alcohol emanating both from Verbeck's vehicle and Verbeck, himself. Ultimately, Verbeck failed the standardized field sobriety tests he was asked to perform, tested positive for alcohol via a portable breathalyzer, and marijuana, among other items, was found in Verbeck's vehicle.

Verbeck was then taken into custody. Verbeck was transported first to the hospital for a blood draw and then to the county jail for fingerprinting. Prior to the blood draw, the troopers apprised Verbeck, verbatim, of the language contained in Form DL-26B and indicated that it was Verbeck's decision whether to consent to a blood draw. Verbeck verbally consented to a blood draw and signed Form DL-26B.

Verbeck filed a motion to suppress, which was denied by the suppression

court. Following a non-jury trial, the court convicted Verbeck of the offenses specified above. After sentencing, Verbeck filed a timely appeal. Both Verbeck and the trial court have complied with the dictates of Pa.R.A.P. 1925.

On appeal, Verbeck challenges:

1. Whether the arresting officer had probable cause to effectuate a traffic stop.

2. Whether Verbeck's consent to having his blood drawn was unknowing, unintelligent, and involuntary.

3. Whether the sentencing court erroneously treated Verbeck's prior acceptance of the Accelerated Rehabilitative Disposition ("ARD") Program as a prior offense for sentencing purposes.

**See** Appellant's Brief, at 14; Appellant's Supplemental Brief, at 4.

Verbeck's first two issues inherently deal with the denial of his motion to suppress, as relief on either claim would eliminate much, if not all, of the evidence employed against him at his non-jury trial. Verbeck asserts that the state troopers did not have probable cause to stop his vehicle and also avers that he did not voluntarily submit to the blood draw taken at the police station.

Our Court's standard of review for a suppression issue is deferential to the suppression court's findings of fact, but not its conclusions of law:

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of

the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (internal citations omitted).

Preliminarily, we note the thorough and responsive nature of the suppression court's opinion. More specifically, the suppression court laid out, at length, its findings of fact. *See* Suppression Court Opinion, 6/25/19, at 2-5. Those factual determinations included an implicit belief in the troopers' testimonies as they described the events on the day Verbeck was arrested, which is reflected in the suppression court's ultimate conclusion that the troopers had probable cause to effectuate a vehicle stop. *See id*., at 10.

The troopers believed that Verbeck had violated two provisions of Pennsylvania's Motor Vehicle Code: 75 Pa. C.S.A. § 3302 (oncoming vehicles must yield to the right when passing) and 75 Pa. C.S.A. § 3309(1) (maintaining vehicle within one lane). The suppression court found the troopers' testimonies credible when they indicated that Verbeck's vehicle had crossed the double-yellow line and entered into the troopers' lane of travel. *See* Suppression Court Opinion, 6/25/19, at 9-10.

To controvert the troopers' testimonies, however, Verbeck asserts that the dashcam video recorder affixed to the troopers' vehicle refutes the testimonial evidence presented. In fact, Verbeck believes "the video evidence wholly contradicts Trooper Trate and Trooper Ammerman's testimony about

- 4 -

[his] driving, and therefore should be disregarded or, at minimum, be afforded significantly diminished weight." Appellant's Brief, at 27. Verbeck goes on to describe the video recording as "unambiguous." *Id*., at 28.

After an independent and intensive review of the recording, we find no objectively determinative dissimilarities between the troopers' testimonies and the events as depicted on video. At most, given the grainy and nighttime nature of the footage and the fact that the video shows two separate oncoming vehicles, the recording is inconclusive on whether Verbeck's vehicle entered into the troopers' lane. However, what can be discerned is that consistent with the troopers' testimonies, Verbeck's vehicle travels along the double-yellow line as his vehicle passes. *See* Dash Camera Recording; Suppression Hearing N.T., 3/25/19, at 22, 43-44.

As such, we are left with a record that does not contradict the suppression court's factual findings. We, as an appellate court, cannot upset the credibility determinations of the suppression court, "within whose sole province it is to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Poplawski*, 130 A.3d 697, 711 (Pa. 2015). Based on the troopers' testimonies, which both reflected that Verbeck's vehicle entered into their opposing lane of travel, we agree that they had probable cause to stop Verbeck's vehicle based on at least one violation of Pennsylvania's Motor Vehicle Code.

Moreover, while Verbeck argues in the alternative that any purported vehicular violation was "minor and momentary," Appellant's Brief, at 29, the

troopers' unambiguous testimony that Verbeck's vehicle crossed the double-yellow line in close proximity to the troopers' vehicle passing in the opposite direction establishes a clear and significant safety hazard on the roadway. Instead of conclusory statements that their probable cause was derived from several Motor Vehicle Code violations without further elucidation, the troopers were able to articulate specific facts known to them prior to the stop of Verbeck's vehicle, such as both troopers indicating that Verbeck's vehicle entered approximately half a car length into the troopers' lane of travel.[2] **See** Suppression Hearing N.T., 3/25/19, at 8, 43.

Accordingly, given the existence of probable cause, the traffic stop of Verbeck's vehicle was legal, and he is due no relief on this issue.

As to Verbeck's claims that his consent to a blood draw was not knowing, intelligent, and voluntary and that, as an ancillary matter, the restoration fee provision in Form DL-26B is a violation of the United States Supreme Court's holding in **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016) (establishing that motorists may refuse to submit to warrantless blood tests, but that they could still face civil, rather than criminal, penalties if refused), they, too, are unavailing.

---

[2] While the dashcam video arguably does not support a finding that Verbeck crossed the double-yellow line by half a car length, it seems likely the suppression credited the testimony as referring to half a car width. In any event, any amount of crossing the double-yellow line into oncoming traffic was sufficient to support a finding of probable cause. Since the video does not contradict the trial court's finding, the arguable conflict between the troopers' estimation of distance and the dashcam video does not afford Verbeck any relief.

Given that we find no fault with the suppression court's well-reasoned analysis, detailing all six factors considered in adjudicating whether someone has given knowing consent, we adopt its relevant discussion as our own and affirm on that basis. **See** Suppression Court Opinion, 6/25/19, at 11-15. Notably, we emphasize that Verbeck was adequately apprised, both verbally and in writing, of his right not to submit to a warrantless blood draw. While Verbeck was in custody throughout the blood draw experience, a factor that can cut against consent, the balance of the other remaining factors, such as Verbeck's general cooperation to the proceedings as well as there being no indication Verbeck has any limiting intellectual disabilities clearly weigh in the opposite direction. Although Verbeck asserts he was threatened by one of the troopers with jail time if he did not consent, the suppression court found this contention to not be credible and therefore served no purpose in the suppression court's analysis. **See Commonwealth v. Robertson**, 186 A.3d 440, 448 (Pa. Super. 2018) (indicating that when the only factor weighing against voluntariness was that an individual was in custody, "[n]o reasonable fact-finder could weigh [the] factors and determine that [a person's consent is] involuntary"). Accordingly, Verbeck's claim that the blood draw performed on him was unknowing or involuntary is meritless.

Furthermore, while we recognize the general importance of driving, we find there to be no **Birchfield** violation in conjunction with the text of Form DL-26B. Verbeck cites to **Shoul v. Bureau of Driver Licensing**, 173 A.3d 669 (Pa. 2017), for the proposition that payment of up to two-thousand dollars

for license reinstatement is effectively criminal punishment, given the necessity of driving in this Commonwealth. However, **Shoul** was decided: 1) under the Eighth Amendment and its prohibition on cruel and unusual punishment; 2) in the context of using a vehicle for drug trafficking purposes; 3) while looking at the effect of a lifetime suspension of an individual's commercial driver's license; and 4) without any reference to warrantless blood draws or **Birchfield** whatsoever. In effect, as the question post-**Birchfield** is whether the consequences, as determined by the individual states, of refusing to submit to a warrantless blood test are civil or criminal in nature, **Shoul** appears to be wholly inapplicable, other than in its references to the significance of driving.

Additionally, while Verbeck repeatedly highlights the maximum extent of the license reinstatement fee, **see, e.g**, Appellant's Brief, at 46 (Verbeck "was threatened with enhanced criminal punishment in the form of a $2,000 restoration fee (fine) if he exercised his constitutional right to refuse a warrantless blood draw"), we note that the two-thousand dollar amount is the absolute most one would have to pay if he or she were to seek reinstatement after refusing a warrantless blood draw. Further, while suspension of driving privileges is certainly a significant imposition on the lifestyle of a person, there is no legal basis upon which to conclude that it is an absolute certainty that Verbeck will decide to have his license reinstated. As such, we conclude that Verbeck has failed to convince us that the license restoration fee is the functional equivalent to a criminal fine.

75 Pa.C.S.A. § 1547 clearly sets out the civil penalties for refusing to submit to a warrantless blood draw, which includes, among other things, a suspension to driving privileges as well as a license restoration fee. Our sister Court has stated that "license suspensions, unlike the DUI proceeding, are civil, not criminal, proceedings." **Marchese v. Commonwealth**, 169 A.3d 733, 738 (Pa. Cmwlth. 2017). Obviously, enumerating consequences that are defined as civil does not inherently make it so. However, we are not persuaded by Verbeck's argument that the license restoration fee, based primarily on the maximum payment allowed under the statute, departs the realm of being a civil penalty and is, in fact, a latent criminal sanction. As such, Verbeck's issue fails.

In his final issue, Verbeck complains that the sentencing court erroneously treated his prior acceptance of ARD as a prior offense for sentencing purposes, ultimately subjecting him to an illegal sentence. Verbeck indicates that his prior acceptance of ARD is a "fact" that enhanced his sentence, which, pursuant to **Alleyne v. United States**, 570 U.S. 99 (2013), must have therefore been found beyond a reasonable doubt.

Not long ago, our Court determined in **Commonwealth v. Chichkin** that 75 Pa.C.S.A. § 3806(a) was unconstitutional insofar as it defined a prior acceptance of ARD in a DUI case as a prior offense for sentencing enhancement purposes. **See** 232 A.3d 959, 971 (Pa. Super 2020). Therefore, using **Alleyne** as a guidepost, the Chichkin Court determined that increasing the mandatory minimum sentence under 75 Pa.C.S.A. § 3804 requires the

Commonwealth to "prove, beyond a reasonable doubt, that the [ARD] defendant actually committed the prior DUI offense." ***Id***.

Here, by utilizing his prior acceptance of ARD under § 3806(a), the sentencing court increased Verbeck's sentence without any kind of corresponding hearing or adjudication as to whether Verbeck actually committed the predicate DUI offense. Without the Commonwealth establishing a necessary element for the enhancement of his sentence under § 3804 in a constitutional manner, Verbeck's judgment of sentence must be vacated, and we remand for resentencing as a first-time DUI offender.

While the Commonwealth goes to great lengths to indicate why the ***Chickhin*** decision was incorrectly decided, we are bound by the prior panel's determination in that matter until it is overturned by an *en banc* panel of this Court or by our Supreme Court. ***See Commonwealth v. Karash***, 175 A.3d 306, 307 (Pa. Super. 2017); ***see also Commonwealth v. Morris***, 958 A.2d 569, 581 n.2 (Pa. Super. 2008) (*en banc*) ("It is well-settled that this Court, sitting *en banc*, may overrule the decision of a three-judge panel of this Court).

Judgment of sentence vacated. Remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

President Judge Emeritus Bender joins the memorandum.

President Judge Emeritus Ford Elliott did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/09/2021