J. A02032/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
v.   :
  :
BRIAN PAUL SIMPSON,   :   No. 324 WDA 2019
  :
Appellant   :

Appeal from the Judgment of Sentence Entered January 30, 2019,
in the Court of Common Pleas of Lawrence County
Criminal Division at No. CP-37-SA-0000092-2018

BEFORE:  SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED MARCH 10, 2020**

Brian Paul Simpson appeals **pro se** from the January 30, 2019 judgment

of sentence of a $300 fine plus the costs of prosecution imposed after he was

found guilty in a trial **de novo** of disorderly conduct.[1]  After careful review,

we affirm the judgment of sentence.[2]

The trial court summarized the relevant facts of this case as follows:

> On Thursday, April 5, 2018, Trooper Jerel T. Smith
> and Trooper Robert Cox were working the midnight to
> 8[:00] A.M. shift out of the New Castle Barracks of the
> Pennsylvania State Police.  The Pennsylvania State
> Police received a noise complaint about shooting at
> around 3:00 A.M. made by [appellant's] neighbor,
> either John Argiro or his wife.  The State Police
> dispatch contacted [appellant] and requested him to
> proceed to a nearby Dollar General so the responding

---

[1] 18 Pa.C.S.A. § 5503(a)(2).

[2] The Commonwealth has not filed a brief in this matter.

officers could speak to him safely. Trooper Smith was first dispatched to the house of John Argiro before meeting [appellant] at the Dollar General with Trooper Cox.

Trooper Smith had been involved with a previous call in March of that year where he and another officer warned [appellant] to not shoot his firearm at that time of night or he would probably be cited. The same procedure of meeting at the Dollar General was used in the prior incident. [Appellant] was not charged based on this prior incident.

Returning to the night of the charged behavior, at 2:50 A.M., Troopers Smith and Cox arrived at Argiro's residence, who was the complainant in the previous encounter between [appellant] and Trooper Smith.

Argiro testified [appellant] would fire his gun in the general orientation towards his residence, not to shoot at the residence, but such that he could see the light from the muzzle flash. Argiro did not see a flash on the particular incident in question.

Argiro also testified that [appellant] does not shoot during the daytime, only in the early morning.

While it was clear Argiro and [appellant] were having a personal dispute and some of the Argiro testimony was disputed, this court credited these basic facts as credible.

When contacted about the shooting on April 5, [2018] Trooper Smith indicated the reason [appellant] gave for shooting at that time was because he did not like some lights [that] shone into his bedroom and disturbed his sleep.

This court credited Trooper Smith as credible.

Trial court opinion, 4/12/19 at 1-3 (citations to notes of testimony and footnotes omitted).

Appellant was found guilty of disorderly conduct by the magisterial district judge and appealed to the Court of Common Pleas of Lawrence County. On January 29, 2019, appellant proceeded to a trial *de novo* and was found guilty of one count of disorderly conduct in violation of Section 5503(a)(2). The trial court found appellant not guilty of disorderly conduct under Sections 5503(a)(1), (3), and (4). That same day, the trial court sentenced appellant to pay a $300 fine plus the costs of prosecution. This timely *pro se* appeal followed.[3]

Appellant raises the following issues for our review:

1. Was it prejudicial to [appellant's] rights for the trial court to change an essential element of the charge that appellant was convicted of at the summary court, during the trial, when [a]ppellant was neither charged with or convicted of that charge, and the charge was not indicated as such on the citation?

2. Was the evidence sufficient to prove that [a]ppellant intentionally caused or recklessly risked a public inconvenience, annoyance or alarm by target shooting on his five acre property in a rural neighborhood where target shooting and hunting is common?

3. Was it an abuse of the trial court['/]s discretion to not allow [a]ppellant to elicit testimony from the witness when [the]witness opened the door to this testimony and that his testimony was not hearsay, but in fact circumstantial evidence that he was aware of the North Beaver Township Police determination that [a]ppellant was legally in compliance with Pennsylvania law while

---

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

target shooting on his private property, and was that determination correct?

4. Did appellant[']s use of his private target shooting range after daylight hours violate 18 P[a.]C.S.A. [§] 5503(a)(2) when the [trial] court said using it during day light [sic] hours did not?

5. Does 34 P[a.]C.S.A. [§] 2507(b)(4) and 35 P.S. [§] 4501 prevail over 18 P[a.]C.S.A. [§] 5503(a)(2) in providing immunity from prosecution for making noise from target shooting while on one's own private target shooting range?

6. Was 18 P[a.]C.S.A. [§] 5503(a)(2) unconstitutional as applied to appellant[']s use of his target shooting range in after dark hours?

Appellant's brief at 4-5.[4]

We begin by addressing appellant's claim that he is immune from prosecution for disorderly conduct, based on the purported statutory defense set forth in Section 2507(b)(4) of the Game and Wildlife Code, 34 Pa.C.S.A. § 101 **et seq**. (**Id.** at 38-52.) We disagree.

Here, appellant was found guilty of one count of disorderly conduct in violation of Section 5503(a)(2), which provides that "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . **makes unreasonable noise**[.]" 18 Pa.C.S.A. § 5503(a)(2) (emphasis added). "Pennsylvania law

---

[4] For the ease of discussion, we elect to address appellant's claims in a different order than presented in his appellate brief.

defines unreasonable noise as not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." ***Commonwealth v. Forrey***, 108 A.3d 895, 898 (Pa.Super. 2015) (citations and internal quotation marks omitted). Under this standard, the Commonwealth must prove "that the noise here was unreasonable, ***i.e.***, inconsistent with neighborhood tolerance or standards." ***Id.*** at 899 (citation omitted).

Section 2507(a) of the Game and Wildlife Code governs restrictions on shooting and provides as follows:

> **(a)** **General rule.--**It is unlawful for any person during the open season for the taking of any big game other than turkey to:
>
> (1) Shoot at any mark or target other than legal game or wildlife with a firearm of any kind or a bow and arrow.
>
> (2) Discharge at any time any firearm or release an arrow at random in the general direction of any game or wildlife not plainly visible for the purpose of routing or frightening them.
>
> (3) Discharge at any time any firearm or release an arrow at random or in any other manner contrary to this section.

34 Pa.C.S.A. § 2507(a).

Section 2507(b), in turn, sets forth several exceptions to this general prohibition against "target shooting" during open hunting season[5] by allowing target practice at an approved location. Specifically, Section 2507(b)(4) provides as follows:

> **(b) Exceptions.--**This section shall not be construed to apply in any manner to:
>
> . . . .
>
>> (4) Shooting at a properly constructed target or mark or a dead tree protected by a natural or artificial barrier so that the ball, bullet or arrow cannot travel more than 15 yards beyond the target aimed at, after making due allowance for deflection in any direction not to exceed an angle of 45 degrees. Target shooting shall only be lawful when it is done:
>>
>>> (i) Upon property owned by the shooter or by a guest of the property owner.
>>>
>>> (ii) Within 200 yards of the camp or other headquarters where the person shooting is quartered or is an invited guest or visitor.

34 Pa.C.S.A. § 2507(b)(4).

---

[5] "Open season" is defined in 34 Pa.C.S.A. § 102 as "the indicated periods of the calendar year and the daily hours during which game or wildlife may be legally hunted, taken or killed and includes both the first and the last day of the season or period of time designated by this title or by regulation of the commission." ***Id.***

Here, appellant's reliance on Section 2507(b)(4) as a purported defense to his disorderly conduct charge is misplaced because the exceptions set forth in Section 2507(b) only apply to those offenses listed in Section 2507(a), and not the disorderly conduct statute, which is essentially a noise control law. *See Forrey*, 108 A.3d at 898-899; *see also* 34 Pa.C.S.A. § 2507(b)(4) (noting exceptions to Section 2507(a)). Appellant was not charged with violating Section 2507(a), and accordingly, his claim is meritless.

In a related claim, appellant contends that the trial court erred in failing to interpret 35 P.S. § 4501 to provide him with "immunity from prosecution for making noise from target shooting while on one's own private target shooting range." (Appellant's at 5, 53-57.) Again, we disagree.

> When addressing a question of statutory construction, our standard of review is *de novo* and the scope of our review is plenary. *Commonwealth v. Barbaro*, 94 A.3d 389, 391 (Pa.Super. 2014) (citation omitted). Interpretation of a statute is guided by the polestar principles set forth in the Statutory Construction Act, 1 Pa.C.S.[A.] § 1501 *et seq.*, which has as its paramount tenet that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *Commonwealth v. Hart*, [28 A.3d 898, 908 (Pa. 2011)] (quoting 1 Pa.C.S.[A.] § 1921(a)).

*Commonwealth v. Markun*, 185 A.3d 1026, 1029 (Pa.Super. 2018) (internal quotation marks and brackets omitted; citation formatting amended).

Section 4501 of Title 35, Health and Safety, governs the general immunity provided to owners of shooting ranges from any civil or criminal action based on noise or noise pollution, and provides as follows:

> All owners of rifle, pistol, silhouette, skeet, trap, blackpowder or other ranges in this Commonwealth shall be exempt and immune from any civil action or criminal prosecution in any matter relating to noise or noise pollution resulting from the normal and accepted shooting activity on ranges, provided that the owners of the ranges are in compliance with any applicable noise control laws or ordinances extant at the time construction of the range was initiated. If there were no noise control laws or ordinances extant at the time construction of the range was initiated, then the immunity granted by this act shall apply to said ranges.

35 P.S. § 4501.

The crux of appellant's claim on appeal is premised on his belief that his private property qualifies as a shooting range under Section 4501. Although the term "shooting range" is not defined in the statute, our review of the record supports the trial court's determination that "[appellant's] informal activity of target shooting on his property does not make him an owner of a range for the purposes of Section 4501." (Trial court opinion, 4/12/19 at 13.) As the trial court properly recognized in its opinion, such a finding

> would lead to a near infinite variety of absurd results if all shooting on one's own property was to be immunized from noise control. . . . [T]he extreme informality of [appellant's] specific shooting activity makes it difficult for this court to characterize him as an 'owner of a range' even wh[en] that phrase is taken in a very broad sense.

***Id.***

In any event, even if this court were to construe appellant's property as a shooting range for purposes of Section 4501, the immunity provided for in

this section applies only to "the normal and accepted shooting activity on ranges[.]" 35 P.S. § 4501. Appellant's act of repeatedly shooting his firearm in the pitch black at approximately 3:00 a.m. on a weeknight in an area with neighboring residential properties with children can hardly be considered a "normal and accepted shooting activity" in any community, rural as it may be. (*See* notes of testimony, 1/29/19 at 5-11, 28; *see also* 35 P.S. § 4501.) The interpretation of Section 4501 urged by appellant is clearly unreasonable. If that interpretation were followed, it would favor the private interest of the owner of such a shooting range over the interests of all adjoining landowners. Accordingly, appellant's purported defense under Section 4501 must fail.

Appellant also argues that the citation charging him with disorderly conduct violated his due process rights (*see* appellant's brief at 11-21); that there was insufficient evidence that he possessed the requisite *mens rea* to recklessly create a risk of public inconvenience, annoyance, or alarm sufficient to sustain his conviction under Section 5503(a)(2) (*see* appellant's brief at 22-30); and that the Commonwealth failed to prove: (a) he created a public harm or inconvenience because he was on his private property at the time the shooting occurred (*see id.* at 31-34), and/or (b) the noise he created was inconsistent with the standards of the neighborhood (*see id.* at 35-37).

Our review reveals that the trial court authored a comprehensive and well-reasoned opinion that thoroughly addresses and disposes of appellant's remaining claims. Accordingly, we adopt the pertinent portions of the trial

court's April 12, 2019 opinion as our own for purposes of this appellate review of these claims. (**See** trial court opinion, 4/12/19 at 3-6, 9-11.)

For all the foregoing reasons, we affirm the trial court's January 30, 2019 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2020